13-4385-cv
Liu v. Siemens AG

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————

August Term, 2013

(Argued: June 16, 2014    Decided: August 14, 2014)

Docket No. 13-4385-cv

————————

LIU MENG-LIN,

*Plaintiff - Appellant,*

— v. —

SIEMENS AG,

*Defendant - Appellee.*

————————

B e f o r e:

RAGGI, LYNCH, and LOHIER, *Circuit Judges.*

————————

Plaintiff-appellant Liu Meng-Lin sued defendant-appellee Siemens AG

("Siemens"), his former employer, alleging that Siemens retaliated against him in

response to his disclosures of alleged corrupt conduct, and that Siemens thereby violated the whistleblower antiretaliation provision of the Dodd-Frank Act, 15 U.S.C. § 78u-6(h)(1). The United States District Court for the Southern District of New York (William H. Pauley, III, *Judge*) granted Siemens's motion to dismiss with prejudice, holding that the antiretaliation provision does not apply extraterritorially, and that, on the facts alleged by Liu, the complaint sought an extraterritorial application of the statute. Because a statute is presumed, in the absence of clear congressional intent to the contrary, to apply only domestically, and because there is no evidence that the antiretaliation provision is intended to have extraterritorial reach, we conclude that that provision does not apply extraterritorially. We furthermore conclude that because Liu's complaint alleges that he was a non-citizen employed abroad by a foreign company, and that all events allegedly giving rise to liability occurred outside the United States, applying the antiretaliation provision to these facts would constitute an extraterritorial application of the statute.

AFFIRMED.

————————

DAVID N. MAIR, Kaiser Saurborn & Mair, P.C., New York, N.Y., *for Plaintiff-Appellant* Liu Meng-Lin.

2

ERIC C. LIEBELER, Siemens Corporation, Washington, D.C. (Brant W. Bishop, P.C., Ragan Naresh, Eric S. Nguyen, Kirkland & Ellis LLP, Washington, D.C., *on the brief*), *for Defendant-Appellee Siemens AG.*

Anne K. Small, Michael A. Conley, William K. Shirey, Stephen G. Yoder, Securities and Exchange Commission, Washington, D.C., *for Amicus Curiae* United States Securities and Exchange Commission.

GERARD E. LYNCH, *Circuit Judge*:

The Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010), includes a provision, 15 U.S.C. § 78u-6(h), that prohibits employers from retaliating against whistleblower employees who make certain protected disclosures. The instant case requires us to determine whether § 78u-6(h) protects a foreign worker employed abroad by a foreign corporation where all events related to the disclosures occurred abroad. Because (1) legislation is presumed to apply only domestically unless there is evidence Congress intended otherwise; (2) there is no indication Congress intended the whistleblower protection provision to have extraterritorial application; and (3) the facts in the complaint unequivocally demonstrate that applying the statute in

3

this case would constitute an extraterritorial application, we conclude that the district court properly dismissed the complaint.

## BACKGROUND

Plaintiff-appellant Liu Meng-Lin, a citizen and resident of Taiwan, was employed as a compliance officer for the healthcare division of Siemens China Ltd., a Chinese corporation that is a wholly owned subsidiary of defendant-appellee Siemens AG ("Siemens"), a German corporation whose shares, at all relevant times, were listed on the New York Stock Exchange. According to his complaint, Liu discovered that Siemens employees were indirectly making improper payments to officials in North Korea and China in connection with the sale of medical equipment in those countries. Liu believed that these payments violated both company policy and U.S. anti-corruption measures. He therefore reported this conduct to his superiors through internal company procedures, including in a meeting with a high-ranking Siemens executive in Shanghai, China. Liu claims that as he sought to address these alleged violations, Siemens progressively restricted his authority as a compliance officer, demoted him, and ultimately fired him. Liu does not plead that any of the events related to his firing – the allegedly corrupt conduct, Liu's discovery of that conduct, Liu's

4

efforts to address the corrupt conduct through Siemens's internal protocols, or his subsequent mistreatment by Siemens – occurred within the territorial jurisdiction of the United States.

Two months after Siemens fired him, Liu reported the allegedly corrupt conduct to the Securities and Exchange Commission ("SEC"), charging that Siemens had violated the Foreign Corrupt Practices Act ("FCPA").[1] Liu then brought this action in the United States District Court for the Southern District of New York (William H. Pauley III, *Judge*), alleging that by firing him Siemens had violated the antiretaliation provision of the Dodd-Frank Act, 15 U.S.C. § 78u-6(h)(1)(A). Siemens moved to dismiss the suit for failure to state a claim, Fed. R. Civ. P. 12(b)(6), asserting two separate defects in the complaint: that the antiretaliation provision does not apply extraterritorially, and that none of Liu's

---

[1] We note in passing that Liu does not claim that Siemens retaliated against him for his disclosures to the SEC; he had already been fired by the time he made those disclosures. Rather, Liu claims that he was fired in retaliation for his purely internal reporting of alleged misconduct, and argues that the protection of the Dodd-Frank antiretaliation provision extends to internal whistleblowing. Because we find that Liu's complaint was properly dismissed for other reasons, we need not address Siemens's argument that such internal reporting is insufficient to evoke the protection of the antiretaliation provision. We thus assume without deciding that internal reporting is sufficient to qualify for the statute's protection.

disclosures were "required or protected" by a relevant statute as the antiretaliation provision requires. The district court granted Siemens's motion to dismiss with prejudice on both grounds, holding (1) that on the facts pled, the complaint sought an extraterritorial application of the antiretaliation provision, which does not have extraterritorial reach, and (2) that Liu's complaint failed to establish that he had made a disclosure to the SEC that was "required or protected" by any of the specific statutes enumerated in § 78u-6(h)(1)(A)(iii).

Liu timely appealed, and upon de novo review of the district court's grant of the motion to dismiss, Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F.3d 106, 113 (2d Cir. 2013), we affirm on the ground that Liu seeks an extraterritorial application of the antiretaliation provision, and that that provision does not apply extraterritorially.

## DISCUSSION

We review a motion to dismiss de novo, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Lundy, 711 F.3d at 113. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal

6

quotation marks omitted).  The "factual content" of the complaint must "allow[]

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Id.

"[I]t is a longstanding principle of American law that legislation of

Congress, unless a contrary intent appears, is meant to apply only within the

territorial jurisdiction of the United States."  Morrison v. Nat'l Austl. Bank Ltd.,

561 U.S. 247, 255 (2010), quoting EEOC v. Arabian Am. Oil Co. ("Aramco"), 499

U.S. 244, 248 (1991).  "This principle represents a canon of construction, or a

presumption about a statute's meaning, rather than a limit upon Congress's

power to legislate.  It rests on the perception that Congress ordinarily legislates

with respect to domestic, not foreign matters."  Id. (internal citations omitted).

The presumption that "[w]hen a statute gives no clear indication of an

extraterritorial application, it has none," Kiobel v. Royal Dutch Petroleum Co.,

133 S. Ct. 1659, 1664 (2013), quoting Morrison, 561 U.S. at 255 (alteration omitted),

is rebutted only when the statute's "text, history, and purposes . . . evince a 'clear

indication of extraterritoriality.'"  Id. at 1665, quoting Morrison, 561 U.S. at 265.

Moreover, it is "well established that generic terms like 'any' or 'every' do not

rebut the presumption against extraterritoriality," id., nor do "fleeting

7

reference[s]" to possible international ramifications of an otherwise domestic statute, Morrison, 561 U.S. at 263.

We have read Morrison to "wholeheartedly embrace[] application of the presumption against extraterritoriality, finding that 'unless there is the affirmative intention of the Congress clearly expressed to give a statute extraterritorial effect, we must presume it is primarily concerned with domestic conditions.'" Norex Petroleum Ltd. v. Access Indus., Inc., 631 F.3d 29, 32 (2d Cir. 2010), quoting Morrison, 561 U.S. at 255. We will "thus look for a 'clear' and 'affirmative indication' that a statute applies to conduct occurring outside the territorial jurisdiction of the United States before concluding that the presumption has been overcome." United States v. Weingarten, 632 F.3d 60, 65 (2d Cir. 2011), quoting Morrison, 561 U.S. at 265 (citations and internal quotation marks omitted).

This case involves the reach of the antiretaliation provision of the Dodd-Frank Act, which directs, in relevant part, that

> [n]o employer may discharge . . . or in any other manner
> discriminate against, a whistleblower in the terms and
> conditions of employment because of any lawful act
> done by the whistleblower . . . in making disclosures
> that are required or protected under the Sarbanes-Oxley

8

> Act of 2002 . . ., this chapter, . . . and any other law, rule, or regulation subject to the jurisdiction of the [Securities and Exchange] Commission.

15 U.S.C. § 78u-6(h)(1)(A). To survive Siemens's motion to dismiss, Liu must demonstrate either (1) that the facts alleged in his complaint state a domestic application of the antiretaliation provision of the Dodd-Frank Act, or (2) that the antiretaliation provision is intended to apply extraterritorially.

The first alternative need not detain us long. We have no occasion here to define the precise boundary between domestic and extraterritorial application of this relevant provision, or to delineate the types of contacts within the United States that would render an application of the statute domestic rather than extraterritorial because this case is extraterritorial by any reasonable definition. Liu is a resident of Taiwan employed by the Chinese subsidiary of a German company; he reported to superiors in China and Germany regarding allegedly corrupt activities that took place in China, North Korea, and Hong Kong; and his employers decided, apparently in China and/or Germany, to terminate his employment. In short, the whistleblower, his employer, and the other entities involved in the alleged wrongdoing are all foreigners based abroad, and the whistleblowing, the alleged corrupt activity, and the retaliation all occurred

9

abroad.  The facts alleged in the complaint reveal essentially no contact with the United States regarding either the wrongdoing or the protected activity.

Liu attempts to avoid this conclusion by pointing to one slim connection to the United States.  He argues that "Siemens voluntarily elected to have a class of its securities publicly listed on the New York Stock Exchange and thereby voluntarily subjected itself to – and undertook to comply with – United States securities laws," including the antiretaliation provision.  Appellant's Br. at 10. Liu argues that because Siemens has securities listed on an American exchange, his case is "fundamentally distinguishable" from Morrison, id. at 14.

This argument is unavailing.  Morrison addressed whether Australian purchasers of shares listed on an Australian stock exchange could rely on § 10(b) of the Securities Exchange Act of 1934 to sue the Australian bank that issued the shares.  The Supreme Court concluded that § 10(b) did not have extraterritorial reach, but rather applied "only [to] transactions in securities listed on domestic exchanges, and domestic transactions in other securities."  Morrison, 561 U.S. at 267.  The Court reached this conclusion despite the fact that "[t]here [were] listed on the New York Stock Exchange . . . the [defendant bank's] American Depositary Receipts (ADRs), which represent the right to receive a specified

10

number of" the Australian shares.  Id. at 251.[2]  Morrison thus decisively refutes

Liu's contention that the United States securities laws apply extraterritorially to

the actions abroad of any company that has issued United States-listed securities.

Far from helping Liu, Morrison establishes that where a plaintiff can point

only to the fact that a defendant has listed securities on a U.S. exchange, and the

complaint alleges no further meaningful relationship between the harm and

those domestically listed securities, the listing of securities alone is the sort of

"fleeting" connection that "cannot overcome the presumption against

extraterritoriality."  561 U.S. at 263.   See also In re Royal Bank of Scotland Grp.

PLC Sec. Litig., 765 F. Supp. 2d 327, 336 (S.D.N.Y. 2011) ("The idea that a foreign

company is subject to U.S. [s]ecurities laws everywhere it conducts foreign

transactions merely because it has 'listed' some securities in the United States is

simply contrary to the spirit of Morrison.").  In short, "simply alleging that some

---

[2]  No purchaser of the American-listed ADRs remained party to the suit when the case reached the Supreme Court.  In a curious twist of nomenclamenture, an American investor in the ADRs, Robert Morrison, had been an original plaintiff in the case, "but his claims were dismissed by the District Court because he failed to allege damages."  Morrison, 561 U.S. at 252 n.1.  Morrison did not appeal that ruling, yet, as the Supreme Court noted, Morrison's name "[i]nexplicably" remained attached to the case, id., and he was listed as a petitioner on the subsequent appeals, eventually giving his name to the Supreme Court's decision.

domestic conduct occurred cannot support a claim of domestic application [because] '[i]t is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States.'" Norex, 631 F.3d at 33, quoting Morrison, 561 U.S. at 266 (emphasis in original).

Liu's argument that the statute nevertheless applies to his case requires a somewhat lengthier discussion, but is equally unavailing. The support for the conclusion that the antiretaliation provision has no extraterritorial application is straightforward: there is absolutely nothing in the text of the provision, set forth above, or in the legislative history of the Dodd-Frank Act, that suggests that Congress intended the antiretaliation provision to regulate the relationships between foreign employers and their foreign employees working outside the United States. Given the presumption against extraterritoriality, and the absence of any direct evidence of a congressional intent to apply the relevant provision extraterritorially, Liu's effort to cobble together indirect, circumstantial suggestions of extraterritorial application faces powerful headwinds.

Liu offers several arguments that the statutory language or context of the antiretaliation provision indirectly demonstrates that it is intended to have extraterritorial reach. None provides the "clear and affirmative indication,"

12

Weingarten, 632 F.3d at 65, required to overcome the presumption against extraterritoriality. First, Liu's contention that the antiretaliation provision "contains very broad language that includes all employees," Appellant's Br. at 11, is of no avail. The plain text of the statute contains no hint that the antiretaliation provision is meant to apply extraterritorially, but rather simply indicates that "[n]o employer" may retaliate against a whistleblower, 15 U.S.C. § 78u-6(h)(1). That is precisely the sort of "generic" language that the Supreme Court has expressly stated is insufficient to overcome the presumption against extraterritorial application. See Kiobel, 133 S. Ct. at 1665.

Liu next points to other sections of the Dodd-Frank Act that do have some extraterritorial application to argue, in effect by association, that the antiretaliation provision also should be read to have extraterritorial reach. He points to § 929P(b) of the Dodd-Frank Act, 124 Stat. at 1864-65, which, inter alia, grants district courts jurisdiction where a suit brought by the SEC or the United States government

> allege[s] a violation of the antifraud provisions of [the Securities Exchange Act of 1934] involving (1) conduct within the United States that constitutes significant steps in furtherance of the violation, even if the securities transaction occurs outside the United States

13

and involves only foreign investors; or (2) conduct occurring outside the United States that has a foreseeable substantial effect within the United States.

15 U.S.C. § 78aa(b). Liu argues that "by specifically providing for extraterritorial jurisdiction in a related section of the statute, Congress clearly evidenced its intention to protect SEC whistleblowers located abroad." Appellant's Br. at 16.

Liu's argument inverts the ordinary canons of statutory interpretation. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983) (alteration omitted). There is no exception to this general rule for language effecting extraterritorial application; to the contrary, the Supreme Court has specifically cautioned against acceptance of arguments such as Liu's: "[W]hen a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." Morrison, 561 U.S. at 265. That limitation is founded in "Congress' awareness of the need to make a clear statement that a statute applies" extraterritorially through "express[] legislat[ion]" that enables such application. Aramco, 499 U.S. at 258. As Morrison observes, it would be

14

"superfluous" for a statute to note that a particular provision applies extraterritorially if the entire statute had extraterritorial reach. See 561 U.S. at 265. Since § 929P(b) identifies a particular provision of Dodd-Frank as having such reach, the logical inference is that the antiretaliation provision, enjoying no such explicit grant of extraterritorial application, has none, a conclusion which at least one district court has also reached. See Asadi v. G.E. Energy (USA), LLC, No. 4:12-345, 2012 WL 2522599, at *4 (S.D. Tex. June 28, 2012).

Moreover, Liu's argument fails even on its own terms. Liu does not explain his contention that § 929P(b)'s crisply delineated jurisdictional grant is somehow "related" to the whistleblower antiretaliation provision. In § 929P(b), Congress provided the district court with limited extraterritorial jurisdiction over specific types of antifraud suits brought by governmental entities when the conduct at issue has particular types of relationships to the United States. Liu is not a governmental actor, he has not pled facts of the sort that would confer jurisdiction under § 929P(b), and he cannot argue that the antiretaliation provision qualifies as an antifraud provision of the Securities Exchange Act. In sum, there is no colorable argument that the limited extraterritorial reach of

15

§ 929P(b) supports extraterritorial application of the antiretaliation provision in circumstances such as those alleged by Liu.

Liu next turns to the Dodd-Frank's whistleblower bounty provision, 15 U.S.C. § 78u-6(b), to make a similar argument. The bounty provision allows the SEC, in its discretion, to make award payments to "whistleblowers who voluntarily provided original information to the Commission that led to [a] successful enforcement" action. Id. § 78u-6(b)(1). Liu asserts that the SEC regulations which define the eligibility for a whistleblower bounty suggest that the agency conceives of the bounty as having international reach. He cites a regulation providing that "you are not eligible [for an award] if: . . . You are . . . a member, officer, or employee of a foreign government, any political subdivision, department, agency, or instrumentality of a foreign government, or any other foreign financial regulatory authority." 17 C.F.R. § 240.21F–8(c)(2). Liu further asserts that aspects of the agency's discussion of the bounty provision included in the promulgation of the final rule, 76 Fed. Reg. 34300-01 (June 13, 2011), offer additional support for the idea that the bounty provision is meant to have extraterritorial reach. In particular, he points to the agency's discussion of the tax filing procedures for an award payment to a foreign national, id. at 34348 n.370,

16

and the agency's decision to *avoid* making a categorical determination as to whether a whistleblower's possible violation of foreign laws should affect the eligibility for an award, id. at 34320.

Liu's argument proceeds by a concatenation of strained assumptions. First, it assumes that SEC regulations should be accorded weight in determining congressional intent with respect to the extraterritorial application of a statute. Courts generally defer to reasonable agency interpretations of statutes that are confided to the agency's administrative discretion. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). However, "Chevron[] deference to [an agency's] statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 600 (2004). Given the strong presumption that statutes are limited to domestic application in the absence of clear expression of congressional intent to the contrary, it is far from clear that an agency's assertion that a statute has extraterritorial effect, unmoored from any plausible statutory basis for rebutting the presumption against extraterritoriality, should be given deference. Indeed, Morrison itself describes the presumption against extraterritoriality as a "canon

17

of construction," 561 U.S. at 255, precisely one of the "devices of judicial construction," Gen. Dynamics Land Sys., 540 U.S. at 600, that can resolve the question of congressional intent without the need to resort to the interpretation of agency regulations under Chevron. At least one district court has interpreted our own precedent to mean that "no regulation could 'supply, on Congress's behalf, the clear legislative intent required to overcome,' . . . the presumption against extraterritoriality." Souryal v. Torres Advanced Enter. Solutions, LLC, 847 F. Supp. 2d 835, 843 (E.D. Va. 2012), quoting Desiano v. Warner-Lambert & Co., 467 F.3d 85, 97 n.9 (2d Cir. 2006).

Moreover, even if we assume that the regulations clearly apply the bounty program to whistleblowers located abroad and that some deference would be due such an agency interpretation, it would not follow that Congress intended the antiretaliation provision to apply similarly. As with our analysis of § 929P(b), we must restrict an indication of extraterritorial application "to its terms," Morrison, 561 U.S. at 265; a regulation addressing the bounty provision cannot be taken to support the proposition that the antiretaliation provision should apply extraterritorially. 17 C.F.R. § 240.21F–8(c)(2) does not mention the antiretaliation provision, and indeed, other SEC regulations suggest that the requirements of the

18

antiretaliation and bounty provisions are to be considered separately.[3]  Moreover,

extraterritorial application of the bounty and antiretaliation provisions have far

different international ramifications.  Providing rewards to persons, foreign or

domestic, who supply information about lawbreaking is far less intrusive into

other countries' sovereignty than seeking to regulate the employment practices of

foreign companies with respect to the foreign nationals they employ in foreign

countries.  Applying the antiretaliation provision in circumstances such as Liu's

would effect such an intrusion.  Thus, whatever their merits, none of the

arguments that the *bounty* provision is meant to have extraterritorial reach

provide any support for Liu's claim that the *antiretaliation* provision is meant to

have extraterritorial reach.

---

[3]  For example, 17 C.F.R. § 240.21F–2(b)(iii) states that "[t]he anti-retaliation protections apply whether or not you satisfy the requirements, procedures and conditions to qualify for an award."  The most direct consequence of this provision is that the antiretaliation provisions protect even whistleblowers who, for various reasons enumerated in the statute, cannot collect a bounty.  But it more broadly suggests a separation between the conditions triggering the antiretaliation provision and those triggering the bounty provision, and supports our conclusion that even if the bounty provision has certain extraterritorial applications, it does not follow that the antiretaliation provision must apply extraterritorially as well.

In sum, there is no explicit statutory evidence that Congress meant for the antiretaliation provision to apply extraterritorially, and none of the tangential indications of extraterritorial application elsewhere in Dodd-Frank to which Liu points are sufficiently germane or cogent to overcome the presumption against extraterritoriality. Thus "we must presume [that the antiretaliation provision] is primarily concerned with domestic conditions." Norex, 631 F.3d at 32, quoting Morrison, 561 U.S. at 255.

As the district court was correct in granting Siemens's motion to dismiss because the antiretaliation provision does not apply extraterritorially, we need not reach the various other questions raised by Siemens to determine whether Liu's claim was otherwise adequately pled. In particular, we need not determine whether the district court correctly ruled that § 806 of the Sarbanes-Oxley Act, Pub. L. No. 107-204, 116 Stat. 745, 802, codified as amended at 18 U.S.C. § 1514A (2010), "does not 'require or protect' disclosures of FCPA violations," Meng-Lin Liu v. Siemens A.G., 978 F. Supp. 2d 325, 330 (S.D.N.Y. 2013), or whether Liu's internal reporting of alleged misconduct, with or without his subsequent disclosures to the SEC, qualified  him as a "whistleblower" under the Dodd-Frank Act, id. at 331-332, and we express no views on those issues.

**CONCLUSION**

Because the whistleblower antiretaliation provision of the Dodd-Frank Act,
15 U.S.C. § 78u-6(h), does not apply extraterritorially, and Liu has failed to plead
facts constituting a domestic application of the antiretaliation provision, the
district court correctly granted Siemens's motion to dismiss.  The judgment of the
district court is therefore AFFIRMED.