GERARD E. LYNCH, Circuit Judge,
dissenting from the denial of rehearing en banc:
I join in Judge Jacobs’s dissent from denial of rehearing en banc, because I believe that the tension between the panel’s holding in this case, European Community v. RJR Nabisco, Inc., 764 F.3d 129 (2d Cir.2014), and our prior decision in Norex Petroleum Ltd. v. Access Industries, Inc., 631 F.3d 29 (2d Cir.2010), should be resolved. But I do not join the other dissenters in their criticisms of the panel’s resolution. Because en banc review has been denied, I do not need to come to a definitive conclusion' about the circumstances under which RICO reaches conduct occurring outside the United States. Largely for the reasons explained by Judge Hall, however, I am inclined to think that the better outcome would be to adopt the view of the panel in this case and hold that RICO applies to patterns of predicate acts committed abroad where those predicate acts violate federal statutes with express extraterritorial reach.
As Judge Raggi’s dissent demonstrates, the very concept of “extraterritorial application” of a complex statute such as RICO is a vexing one. See Raggi Dissent at 139- ■ *142 41. Such a question is not easily resolved by sloganeering reference to the presumption against extraterritoriality emphasized in Morrison v. National Australia Bank, Ltd., 561 U.S. 247, 255, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010). The primary prohibition in RICO, and the one at issue here, criminalizes “conduct[ing] ... [an] enterprise’s affairs ... through a pattern of racketeering activity.” 18 U.S.C. § 1962(c). The two key elements are 'the “enterprise” and the “pattern of racketeering.” Which, or what combination, of these elements is critical in determining whether any given application of RICO is “extraterritorial”?
Consider the following hypothetical. A leader of a revolutionary group based largely in a Middle Eastern country, in an effort to intimidate the United States to stop supporting that country’s government, plots and carries out two crimes: planting a bomb near a federal office building in an American city, resulting in the deaths of several people, and beheading an abducted American journalist in the country where the group primarily operates. The terrorist leader is captured by American forces, and is indicted in the United States for violating RICO. The revolutionary group likely qualifies as an “enterprise” under the definition of that term in 18 U.S.C. § 1961(4). Both terrorist strikes qualify as one or more racketeering acts: the bombing in the United States involves arson and murder, chargeable as felonies .under the law of the relevant state, see 18 U.S.C. § 1961(1)(A), and the murder of an American abroad is indictable under 18 U.S.C. § 2332(a)(1)—a statute that by its very terms can only be violated by acts outside the United States — which is listed as a RICO predicate under 18 U.S.C. §§ 1961(1)(G) and 2332b(g)(5)(B). Together, these acts very likely form a “pattern of racketeering activity,” since they are related to each other in goals, methods, and personnel, and they exhibit continuity because the enterprise has a continuous existence that threatens to involve further such acts. See 18 U.S.C. § 1961(5); H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 240-42, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).
Is this an “extraterritorial” application of RICO? Not an easy question. The enterprise in question is primarily foreign, in its membership, goals, and usual sphere of operation. The pattern of racketeering activity took place partially in the United States and partially abroad, though the foreign portion of the pattern involved conduct that Congress has expressly chosen to reach via the extraterritorial application of American law. Whether to characterize the hypothetical indictment as an “extraterritorial application of RICO” is an interesting conceptual question.
But the actual legal question posed by the hypothetical indictment is whether Congress intended to reach such conduct by the RICO statute, and that, as Judge Hall demonstrates, is a rather easy question to answer. See Hall Concurrence at 124-25. Nothing in the definition of “enterprise” excludes foreign-based associations, groups, or corporations, and it is difficult to believe that Congress intended to exclude them. If members of a Mexican drug cartel, the Sicilian Mafia, or a foreign-based terrorist organization commit a series of violent crimes on U.S. soil that would clearly violate RICO if committed by a local drug distribution gang, a New York-based Mafia family, or the Weather Underground, after all, it would be quite odd to consider the prosecution of such acts in the United States an “extraterritorial” application of RICO, and there is certainly no reason to believe that Congress did not intend to apply RICO to such actions simply because the (entirely American) pattern of racketeering was carried *143 out to further the goals of a foreign enterprise.
Does the outcome change if one predicate crime that formed part of the charged pattern of racketeering activity took place abroad, in violation of a statute that Congress (a) expressly gave extraterritorial reach and (b) expressly made a RICO predicate? I can’t see how it does. How can Congress’s enactment of a law specifically designed to protect Americans abroad, and its express incorporation of that law into RICO as a predicate crime, constitute anything other than a clear expression of congressional intent to apply RICO to persons who commit that crime, in furtherance of the affairs of an enterprise, as part of a pattern of racketeering? The plain meaning of RICO demands that result. By including certain crimes with extraterritorial application as RICO predicates — including some that can only be committed abroad — Congress unequivocally expressed its intention that RICO apply to patterns of racketeering activity that include such crimes. You may call this an “extraterritorial” application of RICO if you like, but, whether or not the label is properly applied, there is no doubt that Congress intended to apply RICO in that situation. Nor should that conclusion change if all the predicate crimes alleged were committed abroad — if, for example, the revolutionary group planted no bombs on U.S. soil but carried out multiple be-headings of Americans in violation of 18 U.S.C. § 2332(a)(1). So long as Congress expressly extended its criminal prohibitions to the foreign conduct in question and incorporated those prohibitions into RICO, Congress has determined that such predicate crimes can constitute a pattern within the definition of RICO. Presumably it has done so because a pattern of such crimes strikes at American interests just as much as a pattern of terrorist acts committed in the United States by the same foreign-based enterprise.
Of course, none of this suggests an intention to apply RICO, generally, to conduct committed abroad. If members of a foreign enterprise engage in a pattern of entirely foreign murders and drug distribution, nothing in RICO could make that activity a crime under U.S. law. Indeed, although applying RICO to such conduct would plainly be an “extraterritorial” application of the statute, we need not even invoke the presumption against extraterritoriality to know that the application is impermissible, because the definitional provisions of RICO make clear that Congress did not define such conduct as a RICO violation. A pattern of murders of Italian citizens committed by members of an Italian organized crime group in Italy cannot violate RICO, because murder is a RICO predicate only when it is “chargeable under state law” or indictable under specific federal statutes. See 18 U.S.C. §§ 1961(1)(A), 1961(1)(G). Entirely foreign activity does not qualify, and nothing in RICO indicates any contrary intent to extend its reach to foreign criminality of a similar nature to the domestic conduct covered by RICO. To the extent that Norex holds that RICO does not, of its own force and in general, have “extraterritorial” application in such circumstances, it is of course correct.
In that sense, indeed, RICO does not even implicate the extraterritorial ambiguities raised by most statutes. Most congressional statutes prohibit conduct in general terms that, on their face, could be taken to apply to anyone in the world. In Morrison, for example, the Supreme Court interpreted a provision of the Securities Exchange Act that makes it “unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, *144 or of any facility of any national securities exchange ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device.” See 15 U.S.C. § 78j(b). But we know that Congress generally does not intend, by using such broad language as “any person” or “any national securities exchange,” to apply those generalized prohibitions to actions that take place outside our borders, because Congress ordinarily legislates to regulate conduct within its primary jurisdiction; that is what the presumption against extraterritorial application means. Liu Meng-Lin v. Siemens AG, 763 F.3d 175, 178 (2d Cir.2014). That presumption applies to RICO as it does to other statutes, but RICO is quite explicit that its prohibitions apply only to patterns of racketeering acts that themselves violate state or federal law. It does not, for example, say that “no person shall conduct the affairs of an enterprise through a pattern of committing murder,” but confines itself to patterns of murder, that are chargeable under the law of a state, or that are indictable under specific federal law. Unlike § 10(b), RICO is thus not even susceptible to a literalist reading that its general terms might apply to foreigners.
At the same time, however, Congress was exquisitely clear that some acts that are committed abroad are predicate acts under RICO, and thus can form a pattern of racketeering activity. To the extent that a pattern consisting of such acts is charged as a violation of RICO, I see nothing in the presumption against extraterritoriality that exempts that pattern from prosecution. It therefore seems to me that there is nothing novel or odd about the idea that RICO does not, in general, “apply extraterritorially,” but that it may apply to acts committed abroad where those acts violate statutes that were themselves expressly stated by Congress to have extraterritorial application and that Congress has classified as RICO predicates.
In the present posture of the case, I need not address all of the issues that may arise in working out these basic principles. Nor need I decide how the instant case should be resolved, or whether Norex was correctly decided. I join the dissenters in believing that we would do well to convene en banc to resolve those very questions, and I agree with them that the reasoning and result in this case are deeply in tension with the reasoning and result in Norex, whether or not those two holdings are ultimately irreconcilable. To the extent, however, that the other dissenters see the panel’s approach to RICO and extraterritoriality as deeply disturbing, unprecedented, and inconsistent with Morrison, I respectfully disagree. To the contrary, I believe that any interpretation that suggests that operatives of a foreign enterprise cannot be. held accountable under RICO for a pattern of predicate crimes that violate federal statutes with express extraterritorial reach would astonish the Congress that made such violations RICO predicates in the first place. Should the Supreme Court take up my dissenting colleagues’ invitation to grant further review of this case, I hope and trust that it will not allow the context of this case — a civil action that, like many civil RICO suits, might lead some to doubt the wisdom of allowing a somewhat amorphous statute to be wielded by private interests in endlessly creative ways — to blind it to the clear intention of Congress to apply RICO to foreign terrorist groups who commit patterns of criminal acts that may occur abroad, but that violate American laws with express extraterritorial reach.