**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| TAYO E. DARAMOLA, | No. 22-15959 |
| *Plaintiff-Appellant*, | D.C. No. 3:19-cv-07910-JD |
| v. | |
| ORACLE AMERICA, INC., a Delaware Corporation, on its own behalf and through its wholly owned subsidiaries NetSuite Inc., and Oracle Canada; PAT MERELL; MITA PATNIAK; JAMES BORK; DIONIS GAUVIN; DOUG HARRIS; DOUG RISEBERG, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Northern District of California
James Donato, District Judge, Presiding

Argued and Submitted May 9, 2023
San Francisco, California

Filed February 6, 2024

Before: Sidney R. Thomas, Morgan Christen, and Daniel
A. Bress, Circuit Judges.

Per Curiam Opinion

# SUMMARY[*]

## Labor Law

The panel affirmed the district court's dismissal of a whistleblower-retaliation action brought under the Sarbanes-Oxley and Dodd-Frank Acts by a Canadian citizen.

The panel held that the whistleblower anti-retaliation provisions in the Sarbanes-Oxley and Dodd-Frank Acts do not apply outside the United States. The panel applied a presumption against extraterritoriality. Agreeing with other circuits, the panel concluded that the presumption was not overcome because Congress did not affirmatively and unmistakably instruct that the provisions should apply to foreign conduct.

The panel further held that this case did not involve a permissible domestic application of the statutes, where the plaintiff was a Canadian working out of Canada for a Canadian subsidiary of a U.S. parent company. Agreeing with other circuits, the panel concluded that the focus of the Sarbanes-Oxley anti-retaliation provision is on protecting employees from employment-related retaliation, and the locus of the plaintiff's employment relationship was in Canada. The panel concluded that the plaintiff also did not allege sufficient domestic conduct in the United States in

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

connection with his Dodd-Frank claim.  And the same reasoning disposed of the plaintiff's California state law claims.

---

**COUNSEL**

Mary E. Schultz (argued), Mary Schultz Law PS, Spangle, Washington, for Plaintiff-Appellant.

Sarah E. Bouchard (argued) and Eric C. Kim, Morgan Lewis & Bockius LLP, Philadelphia, Pennsylvania, for Defendant-Appellee.

---

**OPINION**

PER CURIAM:

We are asked to decide whether the whistleblower anti-retaliation provisions in the Sarbanes-Oxley and Dodd-Frank Acts apply outside the United States, and, if not, whether this case involves a permissible domestic application of the statutes.  Our answer to both questions is no.  We therefore affirm the dismissal of the plaintiff's complaint.

I

The alleged facts are as follows.  Plaintiff Tayo Daramola, a Canadian citizen, is a former employee of Oracle Canada.  He resided in Montreal at all relevant times. Daramola's offer letter from Oracle stated that Daramola would be assigned to an office in Canada, but Daramola

worked remotely.  His employment agreement with Oracle stated that it was governed by Canadian law.

By logging into Oracle's computer systems, Daramola could conduct business and collaborate with colleagues in the United States, including employees of Oracle America. Both Oracle America and Oracle Canada are wholly owned subsidiaries of Oracle Corporation, a California-based company that develops and hosts software applications for institutional customers.

One such Oracle product was the "Campus Store Solution," a subscription software service for college bookstores.  In July 2017, Daramola was assigned as lead project manager for the implementation of Campus Store Solution at institutions of higher education in Texas, Utah, and Washington.

Daramola came to believe that Campus Store Solution was defrauding customers.  The product was billed as an e-commerce platform with specific functionalities, but Daramola thought Oracle had no way of delivering the promised features, at least at the agreed-upon price. Daramola reported the suspected fraud to Oracle America and the SEC.

After doing so, Daramola was removed as a project manager.  Daramola's supervisor at Oracle America, Douglas Riseberg, offered Daramola an opportunity to work on another Campus Store Solution project, but Riseberg revoked the offer when Daramola again expressed his unwillingness to take part in fraud.  Riseberg also downgraded Daramola's job performance rating. Believing he had no other option, Daramola resigned from the company.  He sent his resignation letter to an HR

representative of Oracle Canada in Montreal and copied his "U.S. manager," Matthew Posey.

Daramola then filed this lawsuit in federal court in California against Oracle America, Riseberg, and other Oracle America employees.  As relevant here, Daramola claimed that the defendants violated the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A, the 2010 Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. § 78u-6(h)(1), and California law, Cal. Lab. Code § 1102.5, by retaliating against him for protected whistleblower activity.

After allowing jurisdictional discovery, the district court dismissed the claims under Federal Rule of Civil Procedure 12(b)(6).  The court concluded that the anti-retaliation provisions in the two Acts do not apply extraterritorially, and that here, applying those provisions would be extraterritorial because Daramola's principal worksite was in Canada.  The California law claims "founder[ed] on the same extraterritoriality barrier."  Because Daramola had already amended his complaint twice before, the district court dismissed the case with prejudice.

Daramola timely appeals.  Our review is de novo.  *See United States v. Hussain*, 972 F.3d 1138, 1142 (9th Cir. 2020) ("We review questions of statutory interpretation de novo."); *Nguyen v. Endologix*, 962 F.3d 405, 413 (9th Cir. 2020) (reviewing a motion to dismiss for failure to state a claim de novo).

## II

Although the Sarbanes-Oxley and Dodd-Frank Acts "differ in important respects," they both contain provisions designed to "shield whistleblowers from retaliation."

*Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 152 (2018). Both laws mandate that employers may not "discharge, demote, suspend, threaten, harass" or otherwise "discriminate against" an employee "in the terms and conditions of employment" based on the employee's protected whistleblowing activities.  18 U.S.C. § 1514A(a) (Sarbanes-Oxley);  15  U.S.C.  § 78u-6(h)(1)(A) (Dodd-Frank).[1]

---

[1] The Sarbanes-Oxley anti-retaliation provision provides:

> No  [covered]  company . . .  or  any  officer, employee . . .  or  agent of such company . . .  may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee—
>
> > (1) to provide information, cause information to be provided, or otherwise assist in [a qualifying] investigation . . . [or]
> >
> > (2) to file, cause to be filed, testify, participate in, or  otherwise  assist  in  a  [qualifying] proceeding . . . .

18 U.S.C. § 1514A(a).

  The Dodd-Frank anti-retaliation provision provides:

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—
>
> > (i)  in providing information to the [Securities and Exchange] Commission . . . ;

The question in this case is whether either of these anti-retaliation provisions apply to Daramola, a Canadian working out of Canada for a Canadian subsidiary of a U.S. parent company.  To answer that question, we apply a well-known principle of statutory interpretation known as the "presumption against extraterritoriality." *See, e.g.*, *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 417 (2023); *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 335 (2016); *United States v. Alahmedalabdaloklah*, 76 F.4th 1183, 1202–03 (9th Cir. 2023).  That presumption is this: "It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Abitron*, 600 U.S. at 417 (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010)).  Presumptively, "foreign conduct is generally the domain of foreign law." *Id.* (alteration omitted) (quoting *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 455 (2007)).

The Supreme Court has explained that "[d]ual rationales support the presumption against extraterritoriality." *Yegiazaryan v. Smagin*, 599 U.S. 533, 541 (2023).  First, the presumption "serves to avoid the international discord that can result when U.S. law is applied to conduct in foreign

---

      (ii)  in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission . . . ; or

   (iii)  in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 . . . and any other law, rule, or regulation subject to the jurisdiction of the Commission.

15 U.S.C. § 78u-6(h)(1)(A).

countries." *Abitron*, 600 U.S. at 417 (quoting *RJR Nabisco*, 579 U.S. at 335–36). And second, the presumption reflects "the commonsense notion that Congress generally legislates with domestic concerns in mind.'" *Yegiazaryan*, 599 U.S. at 541 (quoting *Smith v. United States*, 507 U.S. 197, 204 n.5 (1993)). The effect of the presumption is to "preserve a stable background against which Congress can legislate with predictable effects." *Morrison*, 561 U.S. at 261. The presumption is thus "a 'canon of construction,' not 'a limit upon Congress's power to legislate.'" *Alahmedalabdaloklah*, 76 F.4th at 1203 (quoting *Morrison*, 561 U.S. at 255).

We apply the presumption against extraterritoriality using a two-step framework. *See Abitron*, 600 U.S. at 417–18; *RJR Nabisco*, 579 U.S. at 337. "At step one, we determine whether a provision is extraterritorial, and that determination turns on whether 'Congress has affirmatively and unmistakably instructed that' the provision at issue should 'apply to foreign conduct.'" *Abitron*, 600 U.S. at 417–18 (quoting *RJR Nabisco*, 579 U.S. at 335, 337). If so, the presumption against extraterritoriality is overcome, and "claims alleging exclusively foreign conduct may proceed." *Id.* at 418.

If not, we proceed to step two to "resolve[] whether the suit seeks a (permissible) domestic or (impermissible) foreign application of the provision." *Id.* At step two, "we 'determine whether the case involves a domestic application of the statute' by 'looking to the statute's focus.'" *Hussain*, 972 F.3d at 1142 (quoting *RJR Nabisco*, 579 U.S. at 337). In conducting this analysis, we ask "whether the conduct relevant to that focus occurred in United States territory." *Abitron*, 600 U.S. at 418 (emphasis omitted) (quoting *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct.

2129, 2136 (2018)).  "'If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application' of the statute, 'even if other conduct occurred abroad.'"  *WesternGeco*, 138 S. Ct. at 2137 (quoting *RJR Nabisco*, 579 U.S. at 337).

## A

Beginning at step one, we conclude that nothing in the anti-retaliation provisions in the Sarbanes-Oxley and Dodd-Frank Acts overcomes the presumption that Congress does not regulate foreign conduct.

Focusing specifically "at the level of the particular provision implicated," *Abitron*, 600 U.S. at 419 n.3, we will not find that a statutory provision regulates foreign conduct unless "Congress has affirmatively and unmistakably instructed that [it] will do so."  *RJR Nabisco*, 579 U.S. at 335.  The anti-retaliation provisions in Sarbanes-Oxley and Dodd-Frank contain no such "affirmative[] and unmistakabl[e]" language.  *Id.*  They do not expressly discuss regulating foreign conduct.  Nor do they otherwise provide any indication that Congress contemplated an extraterritorial application.  *See Abitron*, 600 U.S. at 420 ("It is a 'rare statute that clearly evidences extraterritorial effect despite lacking an express statement of extraterritoriality.'") (quoting *RJR Nabisco*, 579 U.S. at 340)).  "When a [provision] gives no clear indication of an extraterritorial application, it has none."  *RJR Nabisco*, 579 U.S. at 335 (quoting *Morrison*, 561 U.S. at 255).  That is the case here.

Every court to have considered step one of the extraterritoriality framework has held that these two anti-retaliation provisions do not apply extraterritorially.  *See, e.g.*, *Garvey v. Admin. Rev. Bd.*, 56 F.4th 110, 123 (D.C. Cir. 2022) (holding that the anti-retaliation provision of the

Sarbanes-Oxley Act does not apply extraterritorially); *Carnero v. Bos. Sci. Corp.*, 433 F.3d 1, 18 (1st Cir. 2006) (same); *Liu Meng-Lin v. Siemens AG*, 763 F.3d 175, 179, 183 (2d Cir. 2014) (holding that the anti-retaliation provision of the Dodd-Frank Act does not apply extraterritorially but declining to reach step two of the extraterritoriality framework).

The lack of any reference in the anti-retaliation provisions to extraterritorial application is all the more conspicuous considering that other provisions of the Sarbanes-Oxley and Dodd-Frank Acts do expressly apply extraterritorially. *See, e.g.*, 18 U.S.C. § 1513(d) ("There is extraterritorial Federal jurisdiction over an offense under this section."); 15 U.S.C. § 77v(c)(2) (establishing jurisdiction over certain claims brought by the SEC or United States that involve "conduct occurring outside the United States that has a foreseeable substantial effect within the United States"). These provisions demonstrate that "[w]hen it desires to do so, Congress knows how" to speak with sufficient clarity to regulate beyond our borders. *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 258 (1991) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 440 (1989)). When, as here, "legislation explicitly provid[es] one provision with extraterritorial reach," there is reason to doubt that Congress intended "another provision without such language [to] appl[y] overseas." *Garvey*, 56 F.4th at 123; *see also Liu Meng-Lin*, 763 F.3d at 180–81; *Carnero*, 433 F.3d at 10–11.

We therefore agree with the consensus view that the anti-retaliation provisions in the Sarbanes-Oxley and Dodd-Frank Acts do not apply extraterritorially.

### B

We accordingly turn to step two of the analysis and decide whether this case involves a permissible domestic application of either provision.**[2]**  To prove that domestic application is appropriate, we must consider "the statute's 'focus' and ask whether the conduct relevant to that focus occurred in United States territory." *Abitron*, 600 U.S. at 418 (emphasis omitted) (quoting *WesternGeco*, 138 S. Ct. at 2136).  "[I]f the relevant conduct occurred in another country, 'then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.'" *WesternGeco*, 138 S. Ct. at 2137 (quoting *RJR Nabisco*, 579 U.S. at 337).

### 1

We begin with the Sarbanes-Oxley anti-retaliation provision.  For extraterritoriality purposes, "[t]he focus of a statute is the object of its solicitude, which can include the conduct it seeks to regulate, as well as the parties and interests it seeks to protect or vindicate." *Abitron*, 600 U.S. at 418 (quotations omitted).  The "focus test is a tool of statutory interpretation," *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1028 (9th Cir. 2014), which involves considering "the plain import of the statutory text," *Hussain*, 972 F.3d at 1144, along with the broader statutory context and objectives that inform the meaning of a particular provision, *see Morrison*, 561 U.S. 247, 267 (2010).

---

[2] Daramola does not make any arguments on appeal directly addressing the "focus" of either anti-retaliation provision, nor does he attempt to distinguish between the statutory "focus" of Sarbanes-Oxley and Dodd-Frank.

Sarbanes-Oxley was enacted in 2002 "[t]o safeguard investors in public companies and restore trust in the financial markets following the collapse of Enron Corporation." *Lawson v. FMR LLC*, 571 U.S. 429, 432 (2014). Congress was particularly concerned "that Enron had succeeded in perpetuating its massive shareholder fraud" by retaliating against and silencing employees who attempted to report misconduct internally or to a federal agency. *Id.* at 435. To address this concern, Sarbanes-Oxley makes it unlawful for covered employers to retaliate against employees in the terms and conditions of employment for reporting possible fraud and violations of securities laws to their supervisors, to a federal agency, or to Congress. 18 U.S.C. § 1514A(a).

Before filing suit in response to a retaliatory employment action, an employee seeking relief under Sarbanes-Oxley must exhaust her administrative remedies by filing a complaint against her employer with the Department of Labor. § 1514A(b)(1)(A). The complaint must be filed within 180 days after the date the employee learns of the retaliatory conduct. § 1514A(b)(2)(D). Sarbanes-Oxley entitles a prevailing employee to "all relief necessary to make the employee whole," including reinstatement, back pay, and "compensation for any special damages sustained as a result of the discrimination." § 1514A(c).

Against this backdrop we agree with the D.C. Circuit and conclude that the "focus" of the Sarbanes-Oxley anti-retaliation provision is on protecting employees from employment-related retaliation. *See Garvey*, 56 F.4th at 127.

Because the focus of the Sarbanes-Oxley whistleblower anti-retaliation provision is on prohibiting employment-related retaliation, Daramola must demonstrate that the locus

of his employment relationship was "in United States territory." *WesternGeco*, 138 S. Ct. at 2136; *see also Garvey*, 56 F.4th at 127 (explaining that the conduct relevant to the "focus" of the anti-retaliation provisions is "the locus of an employee's work and the terms of his or her employment contract").

Daramola's employment relationship with Oracle involved a mix of domestic and foreign conduct, as is often the case when a foreign employee does work with a U.S. parent entity. On the domestic side, Daramola points out that he regularly accessed Oracle's U.S. servers; his supervisors were located in the United States; he worked with U.S. employees and U.S. customers and submitted his hours to Oracle America; and Oracle Canada was the wholly owned subsidiary of a U.S. corporation.

At the same time, Daramola's employment relationship involved critical foreign connections. Daramola, a Canadian citizen, resided in Canada at all relevant times. He was employed by a Canadian company, Oracle Canada. He agreed that Canadian law would govern his employment contract (Daramola attached the contract to a declaration he filed in the district court, which he included in his excerpts of record on appeal). And when Daramola eventually resigned, he formally notified Oracle Canada's HR department.

Here, the locus of Daramola's employment relationship was in Canada, such that application of the Sarbanes-Oxley anti-retaliation provision would be impermissibly extraterritorial. Other Circuits have drawn similar conclusions under like circumstances.

We begin with the D.C. Circuit's decision in *Garvey*, which offers the most extensive treatment of the Sarbanes-

Oxley anti-retaliation provision to date. The plaintiff in *Garvey* was a U.S. citizen employed overseas, first by the Morgan Stanley Japan Group in Tokyo and then by Morgan Stanley Asia Limited in Hong Kong. 56 F.4th at 115, 128. Both companies were subsidiaries of a U.S. parent company, Morgan Stanley. *Id.* at 115. The plaintiff's employment agreement with Morgan Stanley Asia Limited was specifically governed by Hong Kong law. *Id.* The plaintiff "raised a number of concerns with his superiors in New York regarding potential U.S. securities law violations committed by Morgan Stanley employees," which "occur[ed] predominately overseas but affect[ed] U.S. markets." *Id.* At one point, he traveled to New York to assist in the company's investigation of these reported violations. *Id.* at 119. The plaintiff claimed that Morgan Stanley retaliated against him for raising these issues, leading him to resign. *Id.* at 119, 128.

The D.C. Circuit held that in these circumstances, application of the Sarbanes-Oxley whistleblower anti-retaliation provision would be impermissibly extraterritorial. *Id.* at 129. Treating as relevant conduct "the locus of an employee's work and the terms of his or her employment contract," *Garvey* found significant that the plaintiff was working out of foreign countries for a foreign employer, including under an employment agreement governed by foreign law. *Id.* at 127–28. The plaintiff, for his part, pointed to his U.S. citizenship, that his employer's parent entity was a U.S. company, that the alleged fraud affected U.S. markets, and that the retaliation against him was allegedly orchestrated in the United States. *Id.* at 128. But the D.C. Circuit concluded that "[t]hese allegations neither change the overseas locus of Garvey's employment nor make the conduct domestic." *Id.* The plaintiff's case called

for an extraterritorial application of Sarbanes-Oxley's anti-retaliation provision because "[t]he alleged retaliation against Garvey occurred solely in connection with his work for Morgan Stanley Asia Limited, an extraterritorial employer." *Id.* at 129.

The First Circuit's decision in *Carnero* is also instructive. In that case, the plaintiff was a citizen of Argentina who worked for Argentinian and Brazilian subsidiaries of a Delaware corporation. 433 F.3d at 2–3. His employment agreement provided that the laws of Argentina would govern. *Id.* at 2. The plaintiff argued that application of the Sarbanes-Oxley anti-retaliation provision would be domestic because "he maintained contact with" the U.S. parent corporation, "travel[ed] frequently to Massachusetts to meet with supervisors there," and because the parent company's Massachusetts employees exercised "extensive and continuous control . . . over his work . . . in Latin America." *Id.* at 3. The First Circuit found these domestic contacts insufficient. It held that because the plaintiff "was a resident of Argentina and Brazil directly employed by foreign companies operating in those countries," application of the Sarbanes-Oxley whistleblower protections would be extraterritorial. *Id.* at 18 & n.17.

Our conclusion that the relevant conduct in this case occurred outside the United States is consistent with the decisions in *Garvey* and *Carnero*. In the case before us, the employment relationship is between a Canadian employer and Canadian employee, to be governed by Canadian law, with the employee residing in Canada. Considered together, these fundamental features of Daramola's employment outweigh the domestic aspects of his work. We conclude that application of the Sarbanes-Oxley anti-retaliation provision would not be domestic in nature.

2

We next address the applicability of Dodd-Frank's anti-retaliation provision to the case before us. Congress responded to the 2008 financial collapse by enacting Dodd-Frank to "promote the financial stability of the United States by improving accountability and transparency in the financial system." *Digit. Realty*, 583 U.S. at 155 (quoting Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010)). In Dodd-Frank, Congress "established 'a new, robust whistleblower program designed to motivate people who know of securities law violations *to tell the SEC*.'" *Digit. Realty*, 583 U.S. at 155 (emphasis added) (quoting S. Rep. No. 111–176, at 38 (2010)).

The Dodd-Frank anti-retaliation provision makes it unlawful for covered employers to retaliate against whistleblowers in the terms and conditions of employment for reporting possible violations of the securities laws to the SEC, for participating in an SEC proceeding, or for making disclosures required or protected under Sarbanes-Oxley and certain other securities laws. 15 U.S.C. § 78u-6(h)(1)(A).

Dodd-Frank's whistleblower provision works in tandem with Dodd-Frank's strong incentives to encourage reports to the SEC, including double back pay, § 78u-6(h)(1)(C)(ii), reinstatement of the employee's position with seniority, § 78u-6(h)(1)(C)(i), and eligibility for cash payments if the report leads to a successful SEC enforcement action, § 78u-6(b)(1). Specifically, whistleblowers who provide information leading to successful SEC enforcement actions can receive awards between 10 to 30 percent of any monetary sanction ultimately imposed by the SEC. *Id.* These cash bounties are not limited to employees; Dodd-

Frank defines "whistleblower" to mean any person who provides "information relating to a violation of the securities laws to the [SEC]." § 78u-6(a)(6). Employees who report misconduct to their supervisors alone are not eligible for Dodd-Frank's cash bounties. It is not necessary for Dodd-Frank whistleblowers to file complaints against their employers with the Department of Labor, and Dodd-Frank allows a six-year statute of limitations period from the date of the employer's retaliation, § 78u-6(h)(1)(B)(iii)(I)(aa)— in sharp contrast to the six-month period allowed by Sarbanes-Oxley, 18 U.S.C. § 1514A(b)(2)(D).

Unlike the Sarbanes-Oxley provision, no circuit court has addressed the focus of Dodd-Frank's anti-retaliation provision. Because the 15 U.S.C. § 78u-6(h)(1) is embedded in a statute with a different "purpose and design," *Digit. Realty*, 583 U.S. at 162, we do not assume the two anti-retaliation provisions have an identical focus. However, because Daramola does not argue that the focus of the Dodd-Frank Act's anti-retaliation provision is different than that of Sarbanes-Oxley, we need not define the contours of Dodd-Frank's "purpose and design" in this context, nor decide whether the anti-retaliation provision of the Dodd-Frank Act should be understood to have a different purpose beyond protecting the employment relationship.

As we noted in our discussion of Sarbanes-Oxley, the employment relationship in this case is between a Canadian employer and Canadian employee, to be governed by Canadian law, with the employee residing in Canada. Any domestic duties he performed were incidental to his foreign employment.

Daramola focuses heavily on the fact that he accessed Oracle's web servers located in California. We reject this

"server" theory of domestic conduct.  No court has held that accessing a server in the United States is sufficient "domestic" conduct, so as to permit the application of either the Sarbanes-Oxley or Dodd-Frank anti-retaliation provisions.  Given the ubiquity of server connections to and through the United States, treating such a tenuous connection as sufficient domestic conduct would effectively negate the presumption against extraterritoriality.  *See Morrison*, 561 U.S. at 266 ("[T]he presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case.").  Because Daramola has not made a colorable argument that the relevant conduct in this case represents a domestic application of the statute, we affirm the district court's order dismissing Daramola's Dodd-Frank claim.

Our conclusion that Daramola has not alleged sufficient domestic conduct in the United States is consistent with the Second Circuit's decision in *Liu Meng-Lin v. Siemens AG*, which offers the most extensive treatment of the extraterritorial application of Dodd-Frank's whistleblower provision to date.  The plaintiff in that case was a citizen and resident of Taiwan who worked for a Chinese subsidiary of a German corporation that was listed on the New York Stock Exchange.  763 F.3d at 177, 183.  Because essentially all the relevant conduct occurred abroad, the Second Circuit concluded, without reaching the statute's focus, that the relevant conduct in that case was "extraterritorial by any reasonable definition." *Id.* at 179.

3

In concluding that this case would require the impermissible extraterritorial application of the anti-

retaliation provisions, we emphasize that the inquiry to be undertaken in cases like this is necessarily "context-specific." *Yegiazaryan*, 599 U.S. at 540. As the D.C. Circuit noted in *Garvey*, "[t]here may be some situations in which the relationship between an employee who works overseas and the parent company in the United States is so intertwined that a domestic application of [the whistleblower anti-retaliation provisions] may be viable." 56 F.4th at 128. We agree with that observation. We hold only that in this case, and on these facts, the domestic application of U.S. law is not viable.

### III

This same reasoning disposes of Daramola's state law claims. Daramola alleged that Oracle's retaliation violated California's labor laws and its public policy, as reflected in Cal. Bus. & Prof. Code § 17200. Analogous to the federal presumption against extraterritoriality, California presumes that its legislature does "not intend a statute to be 'operative, with respect to occurrences outside the state, . . . unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history.'" *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011) (quoting *Diamond Multimedia Sys., Inc. v. Superior Court*, 968 P.2d 539, 553 (Cal. 1999)).

Here, the California laws that Daramola invokes do not overcome this presumption. *See id.* Nor has Daramola established sufficient relevant conduct that occurred in California. *See, e.g.*, *Diamond Multimedia*, 968 P.2d at 554 (explaining that the proper inquiry is whether "the conduct which gives rise to liability . . . occurs in California"); *McPherson v. EF Intercultural Found., Inc.*, 260 Cal. Rptr. 3d 640, 661 (Cal. Ct. App. 2020) (rejecting the theory that

California labor laws "should be applied to work performed *outside* of California by a *nonresident* even if that work is focused on activities and people actually in California") (emphasis in original) (quotations omitted). Daramola's allegations that he worked "within California" by virtue of his use of web servers located in the state is plainly insufficient.

IV

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**