# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 9, 2012　　　　　Decided March 8, 2013

No. 11-5359

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,
AFL-CIO, LOCAL 3669,
APPELLEE

v.

ERIC K. SHINSEKI, SECRETARY FOR THE U.S. DEPARTMENT OF
VETERANS AFFAIRS AND ROBERT A. PETZEL,
APPELLANTS

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-01722)

———

*Andrea McBarnette*, Assistant U.S. Attorney, argued the cause for appellants. With her on the briefs were *Ronald C. Machen*, *Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

*Martin R. Cohen* argued the cause and filed the brief for appellee. *David A. Borer* entered an appearance.

2

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: The American Federation of Government Employees, AFL-CIO, Local 3669 ("the Union"), asserted unfair labor practice charges against the Department of Veterans Affairs ("VA") on behalf of two nurses at a VA medical center. The VA determined that the charges were covered by the nurses' statutory right of "collective bargaining" but that they "ar[ose] out of . . . professional conduct or competence" within the meaning of 38 U.S.C. § 7422(a)–(b). Therefore, the VA decided that the charges were excluded from review by the Federal Labor Relations Authority ("FLRA"). The Union brought suit, alleging that the VA misread its statutory authority. The district court granted summary judgment in the Union's favor, and the VA appeals. Because we agree with the district court that the VA's decision erroneously interpreted its statutory authority, we affirm.

## I.   BACKGROUND

### A.  Statutory Framework

The Federal Service Labor-Management Relations Statute ("FSLMRS") governs federal labor relations and is codified in title 5, chapter 71 of the U.S. Code. *See* 5 U.S.C. §§ 7101–35. FSLMRS gives federal employees various labor rights, including the right "to form, join, or assist any labor organization . . . freely and without fear of penalty or reprisal," the right "to act for a labor organization in the capacity of a representative," and the right "to engage in

collective bargaining." *Id.* § 7102. To protect these rights, FSLMRS authorizes the FLRA to adjudicate unfair labor practice complaints based on rights protected by FSLMRS. *See id.* §§ 7104, 7118.

A separate statutory scheme governs the labor rights of VA medical professionals, including "[r]egistered nurses." 38 U.S.C. § 7421(b)(5); *see id.* §§ 7401–74. Under this scheme, "[n]otwithstanding any law, Executive order, or regulation, the Secretary shall prescribe by regulation the hours and conditions of employment and leaves of absence of" VA medical professionals. *Id.* § 7421(a). In *Colorado Nurses Ass'n v. FLRA*, we held that this statute gave the VA Secretary "unfettered discretion to issue regulations concerning the working conditions of" VA medical professionals and released the VA from any mandatory collective bargaining obligation. 851 F.2d 1486, 1492 (D.C. Cir. 1988). Following *Colorado Nurses*, Congress passed the Department of Veterans Affairs Labor Relations Improvement Act of 1991, Pub. L. No. 102-40, title II, § 202, 105 Stat. 187, 200 ("VA Act"), which provides in relevant part:

> Except as otherwise specifically provided in this title, the authority of the Secretary to prescribe regulations under section 7421 of this title is subject to the right of Federal employees to engage in collective bargaining with respect to conditions of employment through representatives chosen by them in accordance with chapter 71 of title 5 (relating to labor-management relations).

38 U.S.C. § 7422(a). Thus, Congress extended a right of collective bargaining to VA medical professionals, but it imposed three limitations on this bargaining right:

> Such collective bargaining (and any grievance procedures provided under a collective bargaining agreement) in the case of [VA medical professionals] may not cover, or have any applicability to, any matter or question concerning or arising out of (1) professional conduct or competence, (2) peer review, or (3) the establishment, determination, or adjustment of employee compensation under this title.

*Id.* § 7422(b). The VA Act gives the Secretary of Veterans Affairs exclusive authority to decide whether one of these limitations applies, *see id.* § 7422(d), though the Secretary can delegate this authority to the Under Secretary for Health, as he did here. This appeal turns on the meaning of the phrase "collective bargaining" in the VA Act.

### B. *Factual and Procedural Background*

This case arose following a December 12, 2007, arbitration hearing in which the Union challenged the termination of a VA respiratory therapist. During the hearing, a VA nurse named Anita Krehnke testified in support of VA management. Two VA nurses and Union members, Barbara Galle and Karen Rafter, then allegedly testified that Krehnke's performance as a nurse was substandard. A VA Medical Center ("VAMC") staff attorney reported to the VAMC's Nurse Executive, Christine Lund, that Galle and Rafter so testified. After receiving this report, Lund began an investigation into whether Galle and Rafter violated VAMC policy by failing to notify VAMC management that another nurse was providing substandard care. On December 18, 2007, Lund sent letters to Galle and Rafter advising them of their VAMC and state law reporting obligations and asking to discuss their allegations against Krehnke. The letters informed Galle and Rafter "that failure to report [substandard

practice] is grounds for disciplinary action." Lund later met with both Galle and Rafter and sent them a follow-up letter stating that she had "no substantive findings" regarding their allegations about Krehnke's conduct.

On January 10 and 11, 2008, the Union filed two unfair labor practice charges ("ULPs") with the FLRA against the VAMC, alleging that Lund's requests to meet and her references to disciplinary action constituted reprisal for Galle and Rafter's testimony on behalf of the Union during the arbitration hearing. VAMC responded to the ULPs, arguing that it had a duty to investigate allegations of substandard patient care. VAMC also requested that the VA Under Secretary for Health issue a 38 U.S.C. § 7422(d) determination that the ULPs arose out of "professional conduct or competence" and were thus excluded from collective bargaining under § 7422(b). In response, the Union offered three arguments: First, the Union claimed that the VA Under Secretary lacked legal authority to make a § 7422(d) ruling here because the ULPs did not involve a "collective bargaining" or "grievance procedure" issue within the meaning of § 7422(b). Instead, the Union argued, the ULPs were based on the employees' "right to form, join, or assist any labor organization." 5 U.S.C. § 7102. Second, the Union argued that the arbitration matter did not involve "professional conduct or competence" under § 7422(b). Third, the Union attacked the factual basis for VAMC's request by providing a declaration from one of the Union's attorneys stating that Galle and Rafter's testimony was focused on Krehnke's demeanor and work ethic, not on her competence.

The VA Under Secretary issued a decision on September 2, 2008, holding that the ULPs arose out of professional conduct or competence. After the Union brought suit seeking

reversal of the Under Secretary's decision, the district court vacated that decision, concluding that "the Under Secretary failed to address [the] threshold legal issue" of whether he had "authority to apply any § 7422(b) exclusion in the first place." *American Federation of Government Employees Local 3669 v. Shinseki*, 648 F. Supp. 2d 87, 93 (D.D.C. 2009) (internal quotation mark and brackets omitted). The court remanded to the VA "for a determination as to whether the charges filed by the [Union] with the [FLRA] qualify as 'collective bargaining' or 'grievance procedures provided under a collective bargaining agreement' within the meaning of § 7422(b)." *Id.* at 94–95.

On remand, the Under Secretary determined that the ULPs both qualified as collective bargaining and arose out of professional conduct or competence, except to the extent that VAMC management's letters to and meetings with Galle and Rafter addressed issues other than their and Krehnke's professional conduct. FLRA lacks authority to review the VA's determination or to exercise jurisdiction over ULPs that the Under Secretary excludes from collective bargaining pursuant to § 7422(d). *See, e.g.*, *United States Department of Veterans Affairs, Veterans Affairs Medical Center, Asheville, N.C.*, 57 F.L.R.A. 681, 683 (Jan. 31, 2002). Therefore, the Union filed a complaint in the district court under the Administrative Procedure Act ("APA") alleging, among other things, that the Under Secretary's determination was outside the scope of his statutory authority. *See* 5 U.S.C. § 706(2)(C). The VA moved for dismissal, and the Union and the VA filed cross motions for summary judgment.

The district court granted summary judgment in favor of the Union on the § 706(2)(C) count of its complaint, concluding that "the Under Secretary erred in determining that the Union's unfair labor practice charges relate to matters

of 'collective bargaining' as that term is used in the FSLMRS and 38 U.S.C. § 7422." *American Federation of Government Employees Local 3669 v. Shinseki*, 821 F. Supp. 2d 337, 350 (D.D.C. 2011) ("*Local 3669*"). The VA Act only permits the Under Secretary to exclude certain matters from "collective bargaining (and any grievance procedures provided under a collective bargaining agreement)." 38 U.S.C. § 7422(b). The court explained that "alleged violations of the right to form, join, or assist a union without reprisal do not necessarily implicate the right to engage in collective bargaining," and in this case, the ULPs were not based on a failure to engage in collective bargaining. *Local 3669*, 821 F. Supp. 2d at 349. The court granted summary judgment in the Union's favor, holding that the Under Secretary "exceeded his statutory authority" by excluding the ULPs under § 7422(b). *Id.* at 350–51. The VA appeals.

## II. DISCUSSION

We review *de novo* a district court's grant of summary judgment. *Sherley v. Sebelius*, 689 F.3d 776, 780 (D.C. Cir. 2012). Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, the relevant facts are not in dispute. The APA requires us to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2). The VA contends that the Under Secretary's decision excluding the ULPs was within his statutory authority because the phrase "collective bargaining" should be read broadly to encompass all labor rights. Because we agree with the district court that "collective bargaining" has a narrower meaning and does not include the ULPs at issue, we affirm.

As always, we begin with the text of the statute. *See Milner v. Department of the Navy*, 131 S. Ct. 1259, 1264 (2011). Because we conclude that "Congress has directly spoken to the precise question at issue" and that the text is unambiguous, our analysis also ends with the text. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984). 38 U.S.C. § 7422(a) provides:

> Except as otherwise specifically provided in this title, the authority of the Secretary to prescribe regulations under section 7421 of this title is subject to the right of Federal employees to engage in collective bargaining with respect to conditions of employment through representatives chosen by them in accordance with chapter 71 of title 5 (relating to labor-management relations) [i.e., the FSLMRS].

Chapter 71 of title 5, in turn, defines "collective bargaining" as

> the performance of the mutual obligation of the representative of an agency and the exclusive representative of employees in an appropriate unit in the agency to meet at reasonable times and to consult and bargain in a good-faith effort to reach agreement with respect to the conditions of employment affecting such employees and to execute, if requested by either party, a written document incorporating any collective bargaining agreement reached.

5 U.S.C. § 7103(a)(12). We do not accord *Chevron* deference to the VA's interpretation of the FSLMRS because the VA does not administer that statute. *See Chevron*, 467 U.S. at 842. The VA does not dispute that the ULPs at issue are

outside the scope of the FSLMRS's definition of collective bargaining: the Union's filing of ULPs based on the right to assist a labor union, 5 U.S.C. § 7102, does not fall within FSLMRS's right to bargain.

Instead, the VA asserts that § 7422(a) does not import by reference FSLMRS's definition of collective bargaining. Citing the "rule of the last antecedent," the VA argues that "in accordance with chapter 71 of title 5" only relates to how employee representatives are chosen. *See Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) ("[A] limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows . . . ."). We note initially that the VA failed to raise this argument until its reply brief. Thus, the VA waived any challenge to the district court's determination that "§ 7422 incorporates the term 'collective bargaining' as that term is used in the FSLMRS." *Local 3669*, 821 F. Supp. 2d at 346; *see Wayneview Care Center v. NLRB*, 664 F.3d 341, 352–53 (D.C. Cir. 2011).

Even were this argument not waived, the last antecedent rule "is not an absolute and can assuredly be overcome by other indicia of meaning." *Barnhart*, 540 U.S. at 26; *see also* 2A Norman J. Singer & J.D. Shambie Singer, STATUTES AND STATUTORY CONSTRUCTION § 47.33, at 491 (7th new ed. 2007) ("Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding . . . sections, the word or phrase will not be restricted to its immediate antecedent."). Here, the better interpretation is that § 7422(a)'s reference to the FSLMRS modifies the entire description of the collective bargaining process. First, this interpretation explains why Congress referenced the entirety of "chapter 71 of title 5," most of which has nothing to do with how employee representatives are chosen. *Cf. Ratzlaf v. United States*, 510 U.S. 135, 140–41 (1994) (stating that

"[j]udges should hesitate" to treat statutory language "essentially as surplusage — as words of no consequence").

Second, the parenthetical that immediately follows the reference to the FSLMRS, "(relating to labor-management relations)," likewise suggests that the reference should be read to encompass the entire description of the collective bargaining process. Third, Congress could have placed a comma before "through representatives" if it wanted the FSLMRS reference to qualify only how representatives are chosen. Fourth and finally, our past cases have uniformly treated § 7422(a)'s reference to the FSLMRS as modifying its entire collective bargaining description. *See American Federation of Government Employees Local 446 v. Nicholson*, 475 F.3d 341, 345 (D.C. Cir. 2007) ("38 U.S.C. § 7422(a) gives VA medical professionals the right to bargain according to the rules set out in chapter 71 of title 5, subject to limitations specifically provided in title 38." (internal quotation marks omitted)); *National Federation of Federal Employees Local 589 v. FLRA*, 73 F.3d 390, 392–93 (D.C. Cir. 1996) ("In 1991 Congress granted [VA medical professionals] the right 'to engage in collective bargaining' in accordance with chapter 71 of title 5.").

The VA points to no statute, dictionary, case, or other source of meaning that defines collective bargaining as encompassing all labor rights. Even if § 7422(a) had no explicit reference to the FSLMRS, including its definition of collective bargaining, we consider it highly unlikely that Congress intended to create ambiguity in light of the clear definition of collective bargaining elsewhere in labor law. For example, the National Labor Relations Act defines collective bargaining in a manner similar to the FSLMRS, calling collective bargaining

the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party.

29 U.S.C. § 158(d); *see* 5 U.S.C. § 7103(a)(12). This definition accords with the semantic meaning of "collective bargaining": "negotiation for the settlement of the terms of a collective agreement between an employer . . . and a union," or "any union-management negotiation." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 445 (1981).

We have consistently distinguished between the limited collective bargaining right provided by § 7422 and labor rights more broadly. In *Local 589*, we stated that "Congress has gradually extended *some* of the protections in chapter 71 of title 5 to VA medical personnel, for example . . . by granting all VA medical personnel *limited* collective bargaining rights in 1991." 73 F.3d at 395 (emphases added). Similarly, in *United States Department of Veterans Affairs, Washington, D.C. v. FLRA*, we differentiated the "right to negotiate collective bargaining agreements, or to administer such agreements through grievance arbitration procedures" from "other rights protected by the FSLMRS, including 'the right to form, join, or assist a labor organization without fear of penalty or reprisal.'" 1 F.3d 19, 21 & n.1 (D.C. Cir. 1993) (quoting *United States Department of Veterans Affairs, Veterans Administration Medical Center, San Francisco, Cal.*, 40 F.L.R.A. 290, 301 (April 19, 1991)); *cf. FLRA v. United States Department of the Treasury, Financial Management Service*, 884 F.2d 1446, 1449 (D.C. Cir. 1989)

(referring to "collective bargaining" as a "process" of "contract negotiation"); *id.* at 1461 (Sentelle, J., concurring) (distinguishing between "collective bargaining" and "other representational activities"). Finally, the VA's interpretation does violence to the statutory text. It would be nonsensical to read the phrase "engage in collective bargaining with respect to conditions of employment," 38 U.S.C. § 7422(a), as "engage in labor rights with respect to conditions of employment."

Given the clear definition of collective bargaining, we hold that the district court correctly held that the VA Under Secretary lacked authority under § 7422(d) to exclude these ULPs from the FLRA's jurisdiction. The VA acknowledges — indeed, argues — that the phrase "collective bargaining" should be read the same in § 7422(a) and § 7422(b). As we have shown, "collective bargaining" in § 7422(a) has a narrow definition focused on negotiating a labor agreement, so "collective bargaining" in § 7422(b) has the same narrow meaning. The VA also relies on legislative history, but that reliance is fundamentally flawed. Legislative history cannot create ambiguity in a clear statutory text. *See Milner*, 131 S. Ct. at 1267.

Congress's intent is clear. "If the intent of Congress is clear, that is the end of the matter." *Chevron*, 467 U.S. at 842. A necessary predicate to holding that a § 7422(b) exception to collective bargaining applies is that collective bargaining is at issue. Filing ULPs based on an alleged violation of the right to assist a labor organization does not inherently implicate the right to bargain collectively. Therefore, the Under Secretary's decision excluding the ULPs exceeded his statutory authority. *See* 5 U.S.C. § 706(2)(C).

We emphasize the limited scope of our holding. We are not ruling on the merits of the Union's claim on behalf of the two nurses. Our decision bears only on the Secretary's authority under 38 U.S.C. § 7422(d). Many issues remain unresolved. For example, it remains possible that VA medical professionals are not entitled to the full panoply of labor rights protected by the FSLMRS, but like the district court, we express no opinion on that issue. *Local 3669*, 821 F. Supp. 2d at 350 n.8; *see also Local 589*, 73 F.3d at 394 n.11 ("[W]e have no occasion to address whether VA medical personnel would have title 5 rights in the absence of a regulation."). Our holding today neither prohibits the VA from litigating this issue when the FLRA adjudicates these ULPs nor prevents us from deciding the issue in an appropriate case.

### III. CONCLUSION

For the foregoing reasons, the decision of the district court is

*Affirmed.*