# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 22, 2022     Decided December 23, 2022

No. 21-1182

CHRISTOPHER GARVEY,
PETITIONER

v.

ADMINISTRATIVE REVIEW BOARD, UNITED STATES
DEPARTMENT OF LABOR,
RESPONDENT

MORGAN STANLEY,
INTERVENOR

———

On Petition for Review of an Order
of the Department of Labor (except OSHA)

———

*Christopher Garvey*, pro se, argued the cause and filed the briefs for petitioner.

*Reynaldo Fuentes*, Attorney, U.S. Department of Labor, argued the cause for respondent. With him on the brief was *Megan E. Guenther*, Counsel for Whistleblower Programs.

*Michael E. Kenneally* argued the cause for intervenor in support of respondent. With him on the brief were *Sarah E. Bouchard* and *A. Klair Fitzpatrick*.

Before: PILLARD, *Circuit Judge*, and EDWARDS and ROGERS, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS*, Senior Circuit Judge*: Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes–Oxley Act ("SOX"), aims to encourage disclosure of corporate fraud by protecting employees of publicly traded companies who report illegal activities. 18 U.S.C. § 1514A; 29 C.F.R. § 1980.102(b). To achieve this end, the statute authorizes these employees to file complaints with the Secretary of Labor ("Secretary") or pursue suits in federal district court if they are discharged or otherwise discriminated against for engaging in protected whistleblower activity. There are two principal issues in this case: (1) whether Section 806 has an extraterritorial reach covering persons who are employed overseas by a foreign subsidiary of a U.S.-based corporation; and (2) whether such persons may allege a domestic application of Section 806 if they work exclusively overseas under an employment contract governed by the laws of a foreign nation.

This case was initiated by Petitioner Christopher Garvey. Between 2006 and 2016, Garvey was employed by foreign subsidiaries of Morgan Stanley, a U.S. corporation. In 2006, he was hired by the Morgan Stanley Japan Group in Tokyo. In 2011, he relocated to Morgan Stanley Asia Limited in Hong Kong. When he moved to Hong Kong, Garvey consented to "the exclusive jurisdiction of [Hong Kong's] courts and [] Labour Tribunal," under a contract of employment that was "governed by the laws of Hong Kong." Joint Appendix ("J.A.") 357.

Garvey alleges that, between late 2014 and early 2016, he raised a number of concerns with his superiors in New York regarding potential U.S. securities law violations committed by Morgan Stanley employees. According to Garvey, these alleged legal transgressions included various forms of corporate corruption, occurring predominantly overseas but affecting U.S. markets. *See* J.A. 3-5. Garvey contends that his whistleblowing claims were met with antagonism by his superiors at Morgan Stanley. He says that "[i]n January 2016 [he] received a pay cut and a blunt recommendation to find a job elsewhere"[;] so "[i]n the face of ongoing pressure, hostility and clear and present risk," he "resigned his position in February 2016." Petitioner's Br. 17. Garvey retained counsel to represent his interests after he left Morgan Stanley Asia Limited. However, he contends that he lost the services of his attorney after Morgan Stanley threatened to pursue disciplinary actions against counsel for breach of professional obligations.

In August 2016, Garvey filed a *pro se* complaint with the Occupational Safety and Health Administration ("OSHA") at the Department of Labor ("DOL") against Morgan Stanley for alleged retaliation in violation of Section 806. His complaint was dismissed for failure to allege an adverse employment action. Garvey then sought review by an Administrative Law Judge ("ALJ"), whose adverse decision was then reviewed by the DOL Administrative Review Board ("Board"). The Board rejected his complaint on the grounds that, by its terms, Section 806 does not have extraterritorial application and the facts of the case did not give rise to a domestic application of SOX. J.A. 377-81. Garvey timely petitioned for review in this court.

"It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the

United States." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010) (citations omitted) (internal quotation marks omitted). While "an express statement of extraterritoriality is not essential," the text, context, and legislative history of Section 806 do not contain a "a clear, affirmative indication that [the statute] applies extraterritorially." *RJR Nabisco*, *Inc. v. European Cmty.*, 579 U.S. 325, 337, 340 (2016). Therefore, Garvey has no cause of action under Section 806 unless this "case involves a domestic application of the statute." *Id*.

Garvey argues that his complaint states a viable cause of action because the primary focus of Section 806 is the prevention of corporate fraud and his allegations of fraud affecting U.S. securities markets establish a domestic application of Section 806. We disagree. There is no cause of action under Section 806 for securities fraud. Rather, Section 806 protects *employees* from retaliation by making it unlawful for a company to "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of [the employee's protected activity]." 18 U.S.C. § 1514A(a).

Finally, we hold that Garvey's claim that Morgan Stanley threatened his attorney does not support a domestic application of Section 806. Even if the allegation is true, it would not fall within the compass of the statute because the events giving rise to the claim took place after Garvey's employment was terminated. And Garvey does not contend that Morgan Stanley attempted to undermine his employment prospects after he left the company.

For the reasons given in this opinion, we deny the petition for review.

## I.   BACKGROUND

### A.  Sarbanes-Oxley Act Whistleblower Protections

In 2002, "[t]o safeguard investors in public companies and restore trust in the financial markets following the collapse of Enron Corporation," Congress enacted the Sarbanes-Oxley Act. *Lawson v. FMR LLC*, 571 U.S. 429, 432 (2014) (citing S. REP. NO. 107-146, at 2-11 (2002)). Key among SOX's provisions is Section 806, which "sets a national floor for employee protections" against retaliation for covered employees reporting instances of corporate fraud. *See* S. REP. NO. 107-146, at 20. Section 806 provides in relevant part:

[18 U.S.C.] § 1514A. Civil action to protect against retaliation in fraud cases

(a) WHISTLEBLOWER PROTECTION FOR EMPLOYEES OF PUBLICLY TRADED COMPANIES.--No company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78*l*), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)) including any subsidiary or affiliate whose financial information is included in the consolidated financial statements of such company, or nationally recognized statistical rating organization (as defined in section 3(a) of the Securities Exchange Act of 1934 (15 U.S.C. 78c), or any officer, employee, contractor, subcontractor, or agent of such company or nationally recognized statistical rating organization, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee –

(1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348 ["coordinate statutes"], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by—

. . .

(C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct)[.]

. . .

(b) ENFORCEMENT ACTION.—

(1) IN GENERAL. — A person who alleges discharge or other discrimination by any person in violation of subsection (a) may seek relief under subsection (c), by--

(A) filing a complaint with the Secretary of Labor; or

(B) if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, bringing an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.

18 U.S.C. § 1514A. Nothing in Section 806, nor in any coordinate statute, *see* 18 U.S.C. § 1514A(a)(1) (citing §§ 1341, 1343, 1344, 1348), indicates that the specified protections for employees against retaliation in fraud cases are meant to apply extraterritorially.

When Congress enacted Section 806, it also amended Section 1107, 18 U.S.C. § 1513, another whistleblower provision in the Sarbanes-Oxley Act. This legislative action added subsection (e) to 18 U.S.C. § 1513, providing for criminal sanctions for retaliation against anyone giving truthful information to law enforcement officers relating to the commission of any federal offense. What is noteworthy is that there is *express* language providing for the statute's extraterritorial jurisdiction, under 18 U.S.C. § 1513(d). "That Congress provided for extraterritorial reach as to Section 1107 but did not do so as to Section 806 (the provision relevant here) conveys the implication that Congress did not mean Section 806 to have extraterritorial effect." *Carnero v. Bos. Sci. Corp.*, 433 F.3d 1, 10 (1st Cir. 2006).

### B. The Framework for Civil Actions to Protect Employees Against Retaliation in Section 806 Fraud Cases

Under Section 806, a person alleging discrimination may seek relief by filing a complaint with the Secretary through OSHA. *See* 18 U.S.C. § 1514A(b)(1)(A); *see also* 29 C.F.R. § 1980.103. An aggrieved person may also pursue a civil action in federal district court "if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant." *See* 18 U.S.C. § 1514A(b)(1)(B); *see also* 29 C.F.R. § 1980.114.

The Secretary's adjudication of SOX whistleblower claims is governed by the rules, procedures, and burdens of proof set forth in the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century whistleblower provision, 49 U.S.C. § 42121(b). *See* 18 U.S.C. § 1514A(b)(2). Following an investigation, OSHA issues a determination subject to review by an ALJ. *See* 18 U.S.C. § 1514A(b)(2)(A); 49 U.S.C. § 42121(b)(2)(A); 29 C.F.R. §§ 1980.105, 1980.106. The ALJ may hold a hearing or decide the case on dispositive motions "if the facts and circumstances warrant." 29 C.F.R. § 1980.109(c). The ALJ's decision is subject to discretionary review by the DOL Administrative Review Board. 29 C.F.R. § 1980.110. Unless otherwise provided, and absent intervention by the Secretary, the Board's holding becomes the DOL's final order within 28 calendar days. *See* Delegation of Authority and Assignment of Responsibility to the Administrative Review Board, 85 Fed. Reg. 13186, 13187-88 (Mar. 6, 2020). Any person adversely affected or aggrieved by a final order of the Secretary "may obtain review of the order in the United States Court of Appeals for the circuit in which the violation . . . allegedly occurred or the circuit in which the complainant resided on the date of such violation." 49 U.S.C. § 42121(b)(4)(A).

## C. Dodd-Frank Amendments

In its brief to this court, the Secretary usefully explains the congressional amendments to Section 806 that came in 2010 as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"):

The 2010 amendments to Section 806 extended the period for filing complaints with the Secretary from 90 to 180 days, made pre-dispute arbitration agreements

> inapplicable to Section 806 claims, provided a right to jury trial under 18 U.S.C. § 1514A(b)(1)(B) (which allows a whistleblower to bring a Section 806 claim in district court if the Secretary does not issue a final decision on the claim within 180 days), modified the definition of employers covered by the provision to include nationally recognized statistical ratings organizations, and clarified "that subsidiaries and affiliates of issuers may not retaliate against whistleblowers, eliminating a defense often raised by issuers in actions brought by whistleblowers." *See* §§ 922(b) and (c) and 929A of Dodd Frank, 124 Stat. 1848, 1852; S. Rep. No. 111-176, 2010 WL 1796592 at *114 (Apr. 30, 2010).

Secretary's Br. 35. Notably, nothing in these 2010 amendments addressed the extraterritorial application of Section 806.

In the same legislation, however, Congress expressly provided for the "extraterritorial jurisdiction" of federal courts over actions or proceedings brought or instituted by the Securities Exchange Commission ("SEC") or the United States alleging a violation of the antifraud provisions of the Securities Exchange Act of 1934. *See* Dodd-Frank, Pub. L. No. 111-203, § 929-Z, 124 Stat. 1376, 1864-65 (2010) (referring to authority of the SEC and the United States to bring actions in federal courts under 15 U.S.C. § 77v(a), 15 U.S.C. § 78aa, and 15 U.S.C. § 80b-14). No such legislation was adopted to cover actions brought under Section 806.

## D. Facts and Procedural History of This Case

Garvey was employed as a "regional coverage lawyer" for the Morgan Stanley Japan Group and the Hong Kong-based

Morgan Stanley Asia Limited. J.A. 296. Both corporations are foreign subsidiaries of Morgan Stanley, a U.S. corporation listed on the New York Stock Exchange ("NYSE"). There is nothing in the record to indicate that Garvey was ever employed or routinely supervised by any Morgan Stanley operation within the United States.

As noted above, from the time of his transfer to Hong Kong in 2011 until his alleged constructive discharge in 2016, Garvey consented to "the exclusive jurisdiction of [Hong Kong's] courts and [] Labour Tribunal," under an employment contract "governed by the laws of Hong Kong." J.A. 357. Garvey was paid primarily in local currency, received local benefits, and adhered to Morgan Stanley Asia Limited's rules and policies. J.A. 355-56. His "principal role as the Head of Legal for [Merchant Banking & Real Estate Investing ("MBREI")] in Asia was to advise MBREI, and the MBREI managed funds, in the conduct of their investments and operations in Asia." J.A. 206. More broadly, Garvey was responsible "for the delivery and application of legal advice and regulatory standards to the conduct of business in Asia." J.A. 314. All of Garvey's internal business clients were based outside the United States. J.A. 362-68. And his direct reports were in Asia. J.A. 363-64.

Garvey alleges that, during periods of time when he was with the company, Morgan Stanley employees engaged in insider training, market manipulation, U.S. tax fraud, and other forms of corporate corruption. He says that these misdeeds occurred predominantly overseas. *See* J.A. 3-5, 17, 378. Because he believed that these dealings violated the securities laws of the United States, he reported his concerns to his superiors. J.A. 4. Morgan Stanley officials commenced an internal investigation, and Garvey traveled to New York City to assist in their efforts. J.A. 378. However, Garvey says that

his complaints were never seriously pursued, as Morgan Stanley "abruptly" ended its internal investigation and declined to act on the "problematic" findings that were detailed in an initial report. J.A. 299-300. He asserts that when he notified a superior of his belief that Morgan Stanley manipulated the investigations, he was warned that his actions could threaten future promotion prospects. J.A. 315. On February 5, 2016, facing a pay cut, ongoing pressure from superiors, and alleged legal and ethical risks, Garvey resigned from his position at Morgan Stanley Asia Limited. J.A. 286. Morgan Stanley Asia Limited accepted Garvey's Notice of Resignation and outlined his remaining responsibilities through his final day of employment. J.A. 359-61.

After he left Morgan Stanley Asia Limited, Garvey retained Katz Banks Kumin (formerly Katz, Marshall & Banks, LLP) as counsel. J.A. 50. Garvey alleges that the firm withdrew its representation after Morgan Stanley threatened his counsel with disciplinary actions. Petitioner's Br. 62.

Proceeding *pro se*, Garvey timely filed a Section 806 retaliation complaint against Morgan Stanley with OSHA on August 2, 2016. Finding that Garvey did not suffer an adverse employment action and thus failed to allege a *prima facie* SOX violation, OSHA dismissed his complaint on March 22, 2017. J.A. 10. Garvey timely filed a Notice of Objection with the Office of Administrative Law Judges. J.A. 188.

On November 21, 2019, Morgan Stanley filed a motion to dispose of Garvey's claims following the issuance of two DOL Administrative Review Board decisions holding that Section 806 lacks extraterritorial application. J.A. 343; s*ee Hu v. PTC, Inc*., ARB No. 2017-0068, ALJ No. 2017-SOX-00019, slip op. at 7-11 (ARB Sept. 18, 2019); *Perez v. Citigroup, Inc*., ARB No. 2017-0031, ALJ No. 2015-SOX-00014, slip op. at 4-5

(ARB Sept. 30, 2019). Reviewing "all of the relevant evidence and law," including the two Board decisions, the ALJ granted Morgan Stanley's dispositive motion and dismissed Garvey's complaint. J.A. 183. The ALJ adopted the Board's analysis in *Hu* to hold that (1) Section 806 lacks extraterritorial reach, and (2) Garvey, like Hu, was a foreign-based worker at a foreign subsidiary employed entirely outside of the United States who could not allege a domestic application of Section 806. J.A. 182-83.

Garvey sought review of the ALJ's decision by the Board. On July 16, 2021, the Board affirmed the dismissal of Garvey's complaint. J.A. 377-78. Relying on the two-step framework established by the Supreme Court in *Morrison*, the Board explained that, absent a clear indication that a statute applies extraterritorially, a complainant must establish a cognizable domestic connection to have a viable cause of action under Section 806. J.A. 379 (citing 561 U.S. at 266-70).

In rejecting Garvey's complaint, the Board first concluded that Section 806, by its terms, is not extraterritorial. J.A. 380 (citing *Hu*, slip op. at 7-9, and *Perez*, slip op. at 5). The Board next found that Garvey's complaint "does not represent a domestic application of Section 806." J.A. 380. The Board explained that "[t]he location of the employee's permanent or principal worksite is the key factor to determine whether a claim is domestic or extraterritorial." J.A. 381 n.10. The Board concluded that "[b]ecause the record shows that [Garvey's] permanent or principal worksite was in Hong Kong during the relevant time period, the facts of this matter do not create a domestic application of Section 806." J.A. 381.

Finally, the Board found no merit in Garvey's claim that Morgan Stanley violated Section 806 when it allegedly harassed and threatened his attorney. The Board determined

that "the alleged conduct [was] not an adverse employment action that impacted the terms and conditions of his employment nor did [Garvey] present evidence that the alleged retaliation affected the terms or conditions of any subsequent employment." J.A. 381 n.10. Therefore, the Board concluded that, even if the "alleged claims of post-employment retaliation or harassment have merit, they still would not create a domestic application of Section 806 over [Garvey's] claim." J.A. 381.

Garvey now appeals *pro se*, requesting that we reject the Board's legal determinations and grant his petition for review.

## II.    ANALYSIS

### A.  Standard of Review

Section 806 administrative proceedings are "governed under the rules and procedures set forth in [49 U.S.C. § 42121(b)(4)(A)]." 18 U.S.C. § 1514A(b)(2)(A). Section 42121(b)(4)(A), in turn, says that judicial review shall conform to the standards prescribed in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Therefore, a court typically applies the terms of the APA when reviewing a Board order. *See*, *e.g.*, *Villanueva v. U.S. Dep't of Lab.*, 743 F.3d 103, 108 (5th Cir. 2014); *Welch v. Chao*, 536 F.3d 269, 275-76 (4th Cir. 2008). Under the APA, an order of the Board "will be upheld unless it is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. Factual findings are subject to substantial evidence review. [This means that, a Board] decision must be upheld if, considering all the evidence, a reasonable person could have reached the same conclusion as the [Board]." *Allen v. Admin. Rev. Bd*., 514 F.3d 468, 476 (5th Cir. 2008) (citations omitted) (internal quotation marks omitted).

Several of our sister circuits have held that permissible interpretations of Section 806 by the Board are entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984). *See Day v. Staples, Inc.*, 555 F.3d 42, 54 n.7 (1st Cir. 2009) (noting that "Congress explicitly delegated to the Secretary of Labor authority to enforce § 1514A by formal adjudication . . . and the Secretary has delegated her enforcement authority to the [Board].") (citations omitted); *see also Lockheed Martin Corp. v. Admin. Rev. Bd.*, 717 F.3d 1121, 1131 (10th Cir. 2013); *Wiest v. Lynch*, 710 F.3d 121, 131 (3d Cir. 2013); *Welch*, 536 F.3d at 276 n.2.

Garvey argues that no *Chevron* deference is due in this case because the judgment of the Board does not turn on an interpretation of Section 806. Rather, according to Garvey, the principal issue in this case is whether Section 806 has an extraterritorial application. Petitioner's Br. 12. In addition, Garvey says that that no *Chevron* deference is due because the question of extraterritoriality is a matter of jurisdiction; and Congress did not delegate authority to the DOL to define the reach of SOX. *Id.* at 24. Finally, Garvey says that the "test for determining extraterritoriality based on the location of employment . . . is a legal question that involves the interpretation and application of binding judicial precedent arising out of Supreme Court precedent and is, therefore, entitled to *de novo* review." *Id*. Both the Secretary and the Intervenor argue that the Board's interpretation and application of Section 806 is entitled to deference under *Chevron*. *See* Secretary's Br. 19; Intervenor Morgan Stanley's Br. 9-10.

We need not decide any *Chevron* issue in this case. The Supreme Court has made it clear that "*Chevron* deference does not apply where the statute is clear." *Johnson v. Guzman Chavez*, 594 U.S. ___, 141 S. Ct. 2271, 2291 n.9 (2021); *see*

*also Babb v. Wilkie*, 589 U.S. ___, 140 S. Ct. 1168, 1177 (2020) ("[W]here, as here, the words of [a] statute are unambiguous, the judicial inquiry is complete." (citation omitted) (internal quotation marks omitted)); *Am. Hosp. Ass'n v. Becerra*, 596 U.S. ___,142 S. Ct. 1896, 1906 (2022) (holding that a court is not bound to defer to an agency interpretation of a statute if, "after employing the traditional tools of statutory interpretation, [the court does] not agree with [the agency's] interpretation of the statute").

For the reasons that we explain below, we hold that the text, context, and legislative history of Section 806 do not contain a clear, affirmative indication that the statute applies extraterritorially. And we conclude that Garvey has no cause of action under Section 806 because this case does not involve a domestic application of the statute. Although our legal judgments are consistent with the order issued by the Board, we have pursued *de novo* review in reaching this result. We find the statute and applicable law clear on these matters, so deference under *Chevron* is not an issue. We need not decide whether *Chevron* deference might be due to a Board order in another case involving different issues.

### B. Petitioner's Principal Claims in This Case

Garvey argues that because Section 806 includes terms that may be viewed to have an extraterritorial reach, Section 806 must be extraterritorial in scope. Petitioner's Br. 19, 27-32. In the alternative, Garvey asserts that "there is no need to apply Section 806 extraterritorially" because the facts of the case support a domestic application of Section 806. *Id.* at 20-21, 64.

We assess Garvey's allegations using the two-step framework outlined by the Supreme Court in *Morrison* and its progeny. The Court has explained that:

At the first step, we ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially. We must ask this question regardless of whether the statute in question regulates conduct, affords relief, or merely confers jurisdiction. If the statute is not extraterritorial, then at the second step we determine whether the case involves a domestic application of the statute, and we do this by looking to the statute's "focus." If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.

*RJR Nabisco*, 579 U.S. at 337; *see Morrison*, 561 U.S. at 255, 266. Applying this framework, we are constrained to dismiss Garvey's petition for review.

## C. The Presumption Against Extraterritoriality Cannot Be Overcome

It is well understood that, unless a contrary intent appears, an act of Congress "is meant to apply only within the territorial jurisdiction of the United States." *Morrison*, 561 U.S. at 255 (citation omitted) (internal quotation marks omitted). "This principle represents a canon of construction, or a presumption about a statute's meaning, rather than a limit upon Congress's power to legislate." *Id*.; *see Meshal v. Higgenbotham*, 804 F.3d 417, 425 (D.C. Cir. 2015) ("[E]xtraterritoriality dictates constraint in the absence of clear congressional action.").

The presumption against extraterritoriality "rests on the perception that Congress ordinarily legislates with respect to domestic, not foreign, matters." *Morrison*, 561 U.S. at 255 (citation omitted), and the Supreme Court has applied it "with increased clarity and insistence" in recent years. *United States v. Garcia Sota*, 948 F.3d 356, 358 (D.C. Cir. 2020) (citing *RJR Nabisco*, 579 U.S. 325; *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013); and *Morrison*, 561 U.S. 247). The presumption is rebutted only when the statute's "text, history, or purposes . . . evince[] a clear indication of extraterritorial reach." *Kiobel*, 569 U.S. at 109. Generic terms or "fleeting reference[s]" to possible international applications do not overcome this presumption. *Morrison*, 561 U.S. at 263.

At the first *Morrison* step, we assess whether the statute gives "a clear, affirmative indication that it applies extraterritorially." *RJR Nabisco*, 579 U.S. at 337. "As always, we begin with the text of the statute" in interpretating a challenged provision. *American Federation of Gov't Employees, AFL-CIO, Local 3669 v. Shinseki*, 709 F.3d 29, 33 (D.C. Cir. 2013) (citation omitted); *see also Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018). Where the text is not clear, we turn next to assessing whether any indication of congressional intent overcomes the presumption against extraterritoriality. *See Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 177 (1993) (reviewing "all available evidence" to determine Congress's intent). Where "a statute gives no clear indication of an extraterritorial application, it has none." *Morrison*, 561 U.S. at 255.

We find that the Board properly held that the text, context, and legislative history of Section 806 do not contain a clear, affirmative indication that Congress intended the provision to apply extraterritorially. There is nothing in Section 806 to

indicate that it has an extraterritorial reach covering a person like Garvey, who was employed exclusively in the overseas operation of a foreign subsidiary of a U.S.-based corporation.

***Text and Context.*** Section 806 is "silent as to its territorial reach." *Carnero*, 433 F.3d at 7. The provision contrasts sharply with other statutes that rebut the presumption against extraterritoriality by stating, for example, that they apply to offenses taking place "outside the United States" or that they create "extraterritorial jurisdiction over" the prohibited conduct. *RJR Nabisco*, 579 U.S. at 338 (citations omitted); *see also E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244, 258-59 (1991) ("*Aramco*") (citing numerous statutes that expressly provide extraterritorial application).

Section 806 also contrasts with other SOX enactments, including a whistleblower provision, that expressly provide for extraterritorial enforcement. *See* 18 U.S.C. § 1513(d); *Carnero,* 433 F.3d at 13-14 (noting testimony by U.S. Senators Sarbanes, Graham, and Enzi that demonstrates Congress's awareness of foreign applications of certain SOX provisions, as well as of the associated challenges of such application). We assume "that Congress legislates against the backdrop of the presumption against extraterritoriality." *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 420 (D.C. Cir. 2005). Thus, legislation explicitly providing one provision with extraterritorial reach likely weighs against a finding that another provision without such language applies overseas. *See Garcia Sota*, 948 F.3d at 358; *Aramco*, 499 U.S. at 258 ("When it desires to do so, Congress knows how to place the high seas within the jurisdictional reach of a statute." (citation omitted) (internal quotation marks omitted)). Congress's silence regarding Section 806's scope and concurrent grant of extraterritorial enforcement elsewhere under SOX convey the implication that

it did not intend to provide Section 806 with extraterritorial effect.

*Legislative History.* "Nowhere in the legislative history is there any indication that 18 U.S.C. § 1514A was drafted with the purpose of extending to foreign employees working in nations outside of the United States the right to seek administrative and judicial civil relief under [SOX]." *Carnero*, 433 F.3d at 13. Congress justified Section 806's enactment by detailing insufficiencies in state, not international, protections for whistleblowers. S. REP. NO. 107-146, at 2, 10; *see also Carnero*, 433 F.3d at 11-12. The exhaustive discussion in *Carnero* convincingly confirms that, "[n]ot only is the text of 18 U.S.C. § 1514A silent as to any intent to apply it abroad, the statute's legislative history indicates that Congress gave no consideration to either the possibility or the problems of overseas application," 433 F.3d at 8.

*Post-Enactment History.* As discussed above, Congress enacted Section 929A of Dodd-Frank to expand Section 806's coverage to "any subsidiary or affiliate whose financial information is included in the consolidated financial statements of such company." 18 U.S.C. § 1514A(a); *see* S. REP. NO. 111-176, at 114. At the same time, it provided for the extraterritorial application of enforcement actions brought by the SEC under Section 929P of Dodd-Frank. 124 Stat. 1864-65; *see* H.R. REP. NO. 111-517, at 498-99 (2010). Congress was "obviously aware of *Morrison*," decided shortly before, and enacted "clear, affirmative text rebutting the presumption against extraterritoriality" with respect to Section 929P. *Hu*, slip op. at 9. Yet, Congress notably declined to amend the statute to give an extraterritorial reach to Section 806.

Where, as here, "Congress includes particular language in one section of a statute but omits it in another section of the

same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citations omitted) (internal quotations marks omitted). Congress's silence on Section 806's scope – even as it amended the provision and provided for extraterritoriality elsewhere in the same statute – weighs strongly against a finding that Congress intended to provide for the overseas application of Section 806.

*Petitioner's Claims*. Garvey makes two principal claims in support of his argument that the text of Section 806 demonstrates a clear indication of extraterritorial application. He first contends that the scope of Section 806 is limited by definitions that have specific extraterritorial reach. He further asserts that Section 806 incorporates predicate statutes that have extraterritorial reach. His arguments are unconvincing.

First, Garvey points out that Section 806 prohibits retaliation by certain identifiable companies, *i.e.*, those with a class of securities registered under Section 12, or that are required to file reports under Section 15(d), of the Securities Exchange Act of 1934 – including any subsidiary or affiliate whose financial information is included in the consolidated financial statements of such company. Petitioner's Br. 28-29, 45 n.51 (citing 15 U.S.C. §§ 78l, 78o(d)). Thus, in Garvey's view, "the text of Section 806 provides a clear indication of the intention to have extraterritorial reach consistent with the relevant scope of companies captured by Sections 12 and 15(d)." *Id*. at 28. The essence of his argument seems to be that, because "Sections 12 and 15(d) reach both domestic and foreign issuers," *id*., it necessarily follows that the employees of such companies who are based outside of the United States have a cause of action under Section 806 just as do the employees working in the United States. *Id*. at 27-29, 32-33.

This argument is insufficient to support the extraterritorial application of Section 806.

The applicable case law makes it clear that generic terms in Section 806 that might imply a foreign reach are insufficient to rebut the presumption against extraterritorial applications of the statute. Indeed, the Supreme Court has made it plain that "[t]he principles underlying the presumption against extraterritoriality [] constrain courts exercising their power" in applying a statute enacted by Congress. *Kiobel*, 569 U.S. at 117.

The important point here is that, even if Section 806 reaches some companies that have a presence in foreign countries, the statute is silent on whether it applies to those companies' overseas operations and personnel. In *Carnero*, the First Circuit assumed without deciding that the complainant's employer – an Argentine subsidiary of a U.S. company registered under Section 12 of the Securities Exchange Act – was a covered entity under Section 806 and that the complainant himself was a covered employee under the statute. *See* 433 F.3d at 5-7. The court nevertheless concluded that this did not support an extraterritorial application of Section 806. *Id.* at 7-18. We agree.

Likewise, in *Aramco*, the complainant argued that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, applies extraterritorially because of its broad definition of "employer." *Aramco*, 499 U.S. at 249. A covered employer included companies in industries affecting "commerce," broadly defined to include activities "between a State and any place outside thereof." *Id.* (citation omitted) (internal quotation marks omitted). Although this provision arguably covers U.S. companies operating in foreign countries, the Supreme Court found that this "broad jurisdictional language" did not speak

directly to the question of extraterritoriality and thus did not clearly express congressional intent to apply Title VII extraterritorially. *Aramco*, 499 U.S. at 249-50. Section 806 similarly may prohibit retaliation by foreign companies listed on U.S. securities exchanges, but we cannot thereby infer that it prohibits retaliation claims by anyone at those companies who is employed exclusively outside the United States. *See Kiobel*, 569 U.S. at 118 ("The [Alien Tort Statute] covers actions by aliens for violations of the law of nations, but that does not imply extraterritorial reach—such violations affecting aliens can occur either within or outside the United States.").

In sum, we find no merit in Garvey's first argument that the scope of Section 806 is limited by definitions that have specific extraterritorial reach. His second argument – that Section 806 incorporates "predicate statutes" that have extraterritorial reach – fares no better.

Garvey notes that Section 806 prohibits retaliation against an employee reporting conduct that the employee reasonably believes violates 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1348 (securities fraud). He argues that because these statutes have at least some applications abroad, Section 806 must have an extraterritorial reach. Petitioner's Br. 31-32. We disagree because the relationship between Section 806 and the wire fraud and securities fraud statutes is too tenuous to overcome the presumption against extraterritoriality.

In support of his position, Garvey seeks to rely on the Supreme Court's decision in *RJR Nabisco*, in which Court examined whether separate sections of the Racketeer Influenced and Corrupt Organizations Act ("RICO") have extraterritorial reach. In *RJR Nabisco*, the Court held that "RICO gives a clear, affirmative indication that § 1962 applies to foreign racketeering activity—but only to the extent that the

predicates alleged in a particular case themselves apply extraterritorially. Put another way, a pattern of racketeering activity may include or consist of offenses committed abroad in violation of a predicate statute for which the presumption against extraterritoriality has been overcome." 579 U.S at 339. Garvey analogizes Section 806 to Section 1962 in RICO. He contends that, like Section 1962, Section 806 must have "some extraterritorial application" – presumably, to the extent that the wire and securities fraud statutes apply extraterritorially. Petitioner's Br. 32. He further asserts that the "[t]he wire fraud statute . . . contains an express indication of extraterritoriality by prohibiting fraudulent wire communications in foreign commerce." *Id*. at 31 n.30. And he says that "[t]he securities fraud statute . . . contains a 'clear indication of extraterritorial effect' by incorporating fraud in connection with the trading of publicly traded securities of foreign companies." *Id*. at 31-32 n.30 (citation omitted).

The flaw in Garvey's argument is that, unlike RICO Section 1962, Section 806 does not create liability for a violation of any of the referenced statutes or require proof that any of them occurred. Rather, a person filing a complaint under Section 806 need only "reasonably believe[]" that one of the enumerated crimes occurred. *See* 18 U.S.C. § 1514A(a)(1); 29 C.F.R. § 1980.102. The reported conduct need not violate those fraud statutes if the employee's belief in the violation is reasonable. So whether their prohibitions on fraud apply extraterritorially is irrelevant to whether Section 806's prohibition on retaliation does as well.

Even if the fraud statutes referenced in Section 806 were relevant and even if they applied extraterritorially, Garvey's argument would fail. In citing *RJR Nabisco*, he fails to acknowledge the parts of the Court's opinion which distinguished between RICO's substantive prohibitions on

patterns of racketeering (in 18 U.S.C. § 1962(a)-(d)) and RICO's private right of action (in 18 U.S.C. § 1964(c)). *See* 579 U.S. at 346. The Court found that Section 1964(c) of RICO was not rendered extraterritorial merely because it provides relief for those injured "by reason of a violation of section 1962." *Id*. The Court found that Section 1964(c)'s reference to Section 1962, a provision with extraterritorial reach, did not thereby imbue Section 1964(c) with extraterritorial effect. *Id*. at 347-50. The Court explained that Section 1964(c)'s scope had to be evaluated separately from Section 1962's because "'[t]he creation of a private right of action raises issues beyond the mere consideration whether underlying primary conduct should be allowed or not,'" including the potential for conflict with international laws. *RJR Nabisco*, 579 U.S. at 346 (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004)). Like Section 1964, Section 806 creates a private right of action that "carries with it significant foreign policy implications." *RJR Nabisco*, 579 U.S. at 347 (citation omitted) (internal quotation marks omitted). Its mere reference to fraud statutes that may have some extraterritorial application, absent any clear indicia that Congress also intended the Section 806 whistleblower protections to apply abroad, fails to rebut the presumption against extraterritoriality.

We need not decide whether either fraud statute in fact has extraterritorial effect. *See Sec. & Exch. Comm'n v. Bio Def. Corp.*, No. CV 12-11669-DPW, 2019 WL 7578525, at *12 n.19 (D. Mass. Sept. 6, 2019), *aff'd sub nom. Sec. & Exch. Comm'n v. Morrone*, 997 F.3d 52 (1st Cir. 2021) ("The question whether the wire fraud statute . . . applies extraterritorially has split the circuits."); Petitioner's Br. 31 n.30 (conceding that the securities fraud statute "contains no express extraterritorial authority"). Even assuming they do, we cannot infer from their limited relationship to Section 806 that

Congress intended to apply Section 806 to employment actions abroad.

Congress has had ample opportunities since SOX's passage in 2002 to amend Section 806 to give it extraterritorial effect, as it has done with other statutes. The First Circuit has concluded – and we agree – that Congress's silence regarding extraterritorial reach in Section 806 strongly suggests a lack of congressional intent to allow a cause of action in a case such as this, *i.e.*, involving retaliation against a person whose exclusive place of employment is outside the United States and whose contract of employment is governed by the laws of a foreign nation. "We hold that 18 U.S.C. § 1514A does not reflect the necessary clear expression of congressional intent to extend its reach beyond our nation's borders." *Carnero*, 433 F.3d at 18.

### D. The Record in This Case Does Not Support a Domestic Application of Section 806

As we explained in the introduction to this opinion, Garvey has no cause of action under Section 806 unless this case involves a domestic application of the statute. *See WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. __, 138 S. Ct. 2129, 2136 (2018) (citing *RJR Nabisco*, 579 U.S. at 337-38). In our view, Garvey's complaint does not present a permissible domestic application of the law.

In making this determination, we first consider the statute's focus and then consider the facts alleged to determine whether the conduct relevant to that focus occurred in the United States. *Id*. To determine a statute's focus, courts look to the "conduct [the statute] seeks to regulate, as well as the parties and interests it seeks to protect or vindicate." *Id*. at 2137 (cleaned up). "[I]f the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible

extraterritorial application regardless of any other conduct that occurred in U.S. territory." *RJR Nabisco*, 579 U.S. at 337.

We hold that the clear focus of Section 806 is on *regulating employment relationships* – specifically prohibiting covered employers from retaliating against employees for engaging in the protected activities enumerated in the statute. In assessing the applicability of Section 806, the locus of an employee's work and the terms of his or her employment contract are critically important. Garvey's attempt to apply Section 806 to alleged retaliation against him, notwithstanding that his exclusive place of employment was outside the United States and his contract of employment was governed by the laws of a foreign nation, is necessarily extraterritorial.

It is undisputed that, at all relevant times, Garvey's exclusive places of work were outside the United States, in the Morgan Stanley Japan Group in Tokyo and in Morgan Stanley Asia Limited in Hong Kong. Therefore, Garvey's complaint does not implicate a domestic application of the statute.

***Section 806's Focus***. Although the stated purpose of SOX is to protect investors and build confidence in U.S. securities markets, the provision relevant here – Section 806 – was specifically designed to afford remedies to *employees* of specified offending companies. *See Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767, 774 (2018) (describing Section 806 as a statute that prohibits "employment discrimination," not securities fraud generally) (citation omitted).

Specifically, Section 806 was designed to protect employees from retaliation by making it unlawful for a company to "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of [the

employee's protected activity]." 18 U.S.C. § 1514A(a). Section 806 is directly connected to an employee's terms and conditions of employment, as it was enacted to provide "*protection for employees* of publicly traded companies who blow the whistle on fraud and protect investors." S. REP. NO. 107-146, at 10 (emphasis added). Its "focus" – that is, the conduct it regulates – is on prohibiting employment-related retaliation.

It is also noteworthy that the relevant venue provisions covering complaints under Section 806 presume that an alleged violation occurred or that the complainant lived within the jurisdiction of a U.S. federal court. *See* 49 U.S.C. § 42121(b)(4)(A), (b)(5), incorporated into 18 U.S.C. § 1514A(b). This would not apply to complainants who suffered retaliation while working abroad.

Garvey counters that Section 806 is focused on preventing corporate or securities fraud by prohibiting retaliation against whistleblowers and thus should apply whenever the fraudulent conduct reported would affect U.S. investors. Petitioner's Br. 52-53. But this is not what the text of the statute directs. As discussed above, although Section 806's protections may bolster reporting of corporate fraud and securities violations, its primary focus is on regulating employment.

Section 806 was not intended to cure all the ills of the securities markets; it addresses only retaliatory conduct by certain regulated companies against certain employees who engage in enumerated protected activities. *See* 18 U.S.C. § 1514A(a)(1). Not all companies are covered, and not all employees are protected. And there is no cause of action under Section 806 for securities fraud.

***Extraterritorial Nature of Garvey's Claims****.* It is undisputed that the locus of Garvey's employment was Asia, not the United States. He not only worked exclusively overseas, he also agreed to an employment agreement governed by the laws of Hong Kong, under "the exclusive jurisdiction of its courts and the Labour Tribunal." J.A. 151.

Garvey nonetheless insists he may allege a domestic application by asserting that corporate decisionmakers in the United States directed the retaliation campaign against him, Petitioner's Br. 54-55; the fraudulent activity impacted United States markets, *id*. at 52-53; and Morgan Stanley intimidated his chosen counsel, imperiling his whistleblower complaint under U.S. laws, *id*. at 62. Garvey also underscores his U.S. citizenship and the location of Morgan Stanley Asia Limited's parent company in New York. *Id*. at 14-16, 21, 55-56. These allegations neither change the overseas locus of Garvey's employment nor make the conduct domestic. *See Morrison*, 561 U.S. at 266 (allegedly deceptive conduct occurring in the United States did not make claim domestic); *Liu Meng-Lin v. Siemens AG*, 763 F.3d 175, 180 (2d Cir. 2014) ("[S]imply alleging that some domestic conduct occurred cannot support a claim of domestic application because it is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States.") (cleaned up).

Unless a statute provides otherwise, a U.S. law regulating an employee's terms and conditions of employment does not automatically confer protections to individuals, like Garvey, who have opted to work outside the United States. *See Milanovich v. Costa Crociere*, 954 F.2d 763, 767 (D.C. Cir. 1992) ("Under American law, contractual choice-of-law provisions are usually honored.") (citing Restatement (Second) of Conflict of Laws § 187 (Am. L. Inst. 1971)); *Carnero*, 433 F.3d at 15 (declining to extend Section 806 extraterritorially in

light of other countries' interests in regulating employment relationships).

There may be some situations in which the relationship between an employee who works overseas and the parent company in the United States is so intertwined that a domestic application of Section 806 may be viable. That is not this case, so we will not opine on the matter. In this case, the alleged involvement of Morgan Stanley in decisions about Garvey's employment at Morgan Stanley Asia Limited is insufficient to create a domestic application of Section 806, as "allegations of general corporate activity—like decisionmaking—cannot alone establish [a] domestic application." *Nestlé USA, Inc. v. Doe*, 593 U.S. \_\_\_, 141 S. Ct. 1931, 1937 (2021); *see also Carnero*, 433 F.3d at 2-3 (the involvement of some U.S.-based personnel in the decision to take adverse employment action overseas does not give rise to a domestic application of SOX); *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980 (4th Cir. 1987) (adverse employment actions by a subsidiary are not generally attributable to a parent company).

The alleged retaliation against Garvey occurred solely in connection with his work for Morgan Stanley Asia Limited, an extraterritorial employer. This case does not involve a domestic application of Section 806 and thus fails the second step under *Morrison*.

### E. Garvey's Allegations Regarding Post-Employment Actions Fail

Garvey contends that Morgan Stanley threatened the attorneys he retained, leading to their withdrawal from the case and "significantly prejudic[ing] Petitioner's ability to seek effective redress under Section 806 with respect to his underlying claims." Petitioner's Br. 62. This, Garvey asserts,

"must itself constitute an adverse employment action, and a domestic application" of Section 806, even if it occurred after his employment with Morgan Stanley Asia Limited ended. *Id*. at 64. We disagree.

The alleged conduct – harassment of Garvey's counsel – could not establish a domestic application of Section 806, as it occurred after Garvey's employment at Morgan Stanley Asia Limited ended and did not impact the terms and conditions of his employment. Moreover, there is no evidence that either Morgan Stanley or Morgan Stanley Asia Limited sought to negatively affect Garvey's post-employment opportunities. Absent interference with an employee's current employment or future employment prospects, contested actions arising after employment has terminated do not constitute adverse employment actions. We agree with the Board's holding that post-employment conduct cannot undergird a claim under Section 806 where such conduct does not impact the terms and conditions of a complainant's employment. Accordingly, Garvey's allegations are not within the compass of protections afforded by Section 806.

### III.  CONCLUSION

For the foregoing reasons, we affirm the Board's judgment and deny Garvey's petition for review.

*So ordered.*